Case Nos. 22-5761

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

DOCTOR EUNA MCGRUDER,

    Plaintiff - Appellee,

    and

v.

METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY TENNESSEE, D/B/A METROPOLITAN NASHVILLE PUBLIC SCHOOLS,

    Defendant - Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
Case Nos. 3:17-CV-01547

### DEFENDANT-APPELLANT'S MOTION
### FOR STAY OF INJUNCTION PENDING APPEAL

    Defendant-Appellant the Metro Government of Nashville, moves to stay the District Court's August 18, 2022, Order (RE 116, PageID# 2403-05) that awarded Plaintiff-Appellee the injunctive relief of reinstatement.

    On August 25, 2022, Appellant filed a notice of appeal of the District Court's Order to this Court. (RE 117, PageID# 2406-07.) On the same day, Appellant moved for a stay in the District Court. (RE 118, PageID# 2408.). In

{N0493396.1}

addition, Appellant yesterday filed a motion to ascertain the status of its motion for a stay. (RE 130, PageID# 2561-62.) As of the filing of this motion, the Parties have not heard from the court on either the motion for a stay or to ascertain status.

By not issuing a ruling as of this date, the District Court has failed to afford Appellant the relief requested. Pending review by this Court, and in light of the approaching reinstatement deadline of September 17, 2022, Appellant respectfully requests that this Court stay the District Court's order of reinstatement under FED. R. APP. P. 8(a).

## Discussion

When deciding whether to grant a stay under Rule 8(a), this Court must consider: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *DV Diamond Club of Flint, LLC v. Small Bus. Admin.*, 960 F.3d 743, 745–46 (6th Cir. 2020). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Id.* (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).).

## I. Appellant Has a Substantial Case on the Merits.

Under the first factor, "The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay." *Griepentrog*, 945 F.2d at 153. "Simply stated, more of one excuses less of the other." *Id.* Along those lines, "a movant can satisfy this element where substantial legal questions or matters of first impression are at issue and the equities favor maintaining the status quo." *Simon Property Group v. Taubman Centers*, 262 F. Supp. 2d 794, 798 (E.D. Mich. 2003) (citing *Griepentrog*, 945 F.2d at 154). Accordingly, courts have deemed the first prong satisfied when the moving party presents a "serious legal question," regardless of whether it demonstrates a mathematical probability of success. *C.B.S. Employees FCU v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 716 F. Supp. 307 (W.D. Tenn 1989).

Here, considering Plaintiff-Appellee's failure to disclose her Chapter 7 bankruptcy during the pendency of this case and Appellant's subsequent motion to revise all orders and to dismiss the matter on the grounds of judicial estoppel, there is a significant likelihood that this matter will be dismissed altogether. Further, there exists a serious legal question about whether, in light of the District Court's repeated statements throughout trial about this case being an ill fit for reinstatement, the subsequent incongruity of its award of reinstatement (without

sufficient explanation or justification for reversing course) represents an abuse of discretion as it was an "arbitrary action not justifiable in view of [the] situation." *Balani*, 669 F.2d at 1160-61.

### A.  *Appellee should be judicially estopped from pursuing this matter.*

As stated above, there is a substantial likelihood that, based on Appellee's undisclosed bankruptcy, Appellant's motion to revise orders and to enter a dismissal will succeed. Plaintiff filed her lawsuit in this case in December of 2017. (Complaint, RE 1, PageID# 1-6.) On August 30, 2022, Appellant discovered that, a few months *after* filing her complaint, Appellee filed for Chapter 7 bankruptcy in a federal court outside of the forum jurisdiction of this matter – the United States Bankruptcy Court in the Northern District of Georgia, Atlanta Division. *See attached* (Ex. 1, Voluntary Petition for Chapter 7 Bankruptcy, *In Re: Euna McGruder*, Case No.: 18−60740−lrc, RE 124-1, PageID# 2451-2499.) In her petition, Appellee disclosed some of her assets, (Ex. 1 at PageID# 2645-2649), but she failed to disclose her interest in this case.

It is well established that a debtor in a bankruptcy proceeding must disclose *all* assets, including a potential cause of action. 11 U.S.C. § 521(a); *Eubanks v. CBSK Fin. Grp., Inc.*, 385 F.3d 894, 897 (6th Cir. 2004). Indeed, "The disclosure obligations of consumer debtors are at the very core of the bankruptcy process and meeting these obligations is part of the price debtors pay for receiving the

bankruptcy discharge." *Lewis v. Weyerhauser Co.*, 141 F. App'x 420, 424 (6th Cir. 2005) (cleaned up). "Moreover, [t]he duty of disclosure is a continuing one, and a debtor is required to disclose all potential causes of action." *Id*. at 424.

"The doctrine of judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010) (cleaned up). To that end, in the bankruptcy context, the doctrine will "bar[] claims not disclosed in prior bankruptcy proceedings where (1) the debtor assumes a position contrary to the one asserted under oath while in bankruptcy; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as a part of final disposition; and (3) the debtor's omission did not result from mistake or in advertence." *Brown v. Electrolux Home Prod., Inc.*, 2020 WL 291373, at *2 (M.D. Tenn. 2020) (CAMPBELL, J.).

> 1. *Plaintiff assumed a position contrary to the one she asserted under oath in her bankruptcy case.*

Here, while pursuing a claim against Metro for over a million dollars, (Trial Tr. Vol. IV, Doc. RE 96 at PageID# 2196), Appellee simultaneously affirmatively denied any such claim existed at least three times in her petition:

**Part 4:** Identify Legal Actions, Repossessions, and Foreclosures

9. Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding? List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

■ No
☐ Yes. Fill in the details.

| Case title Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|

RE 124-1 at PageID# 2460

**Part 12:** Sign Below

I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers

Official Form 107      Statement of Financial Affairs for Individuals Filing for Bankruptcy      page 6

are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

/s/ Euna McGruder
**Euna McGruder**
**Signature of Debtor 1**

**Signature of Debtor 2**

Date  June 28, 2018

Date

RE 124-1 at PageID# 2463-2464

30. **Other amounts someone owes you**
   *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security benefits; unpaid loans you made to someone else

■ No
☐ Yes. Give specific information..

RE 124-1 at PageID# 2468

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
   *Examples:* Accidents, employment disputes, insurance claims, or rights to sue

■ No
☐ Yes. Describe each claim.........

RE 124-1 at PageID# 2468

**Part 3:** Sign Below

Under penalty of perjury, I declare that I have indicated my intention about any property of my estate that secures a debt and any personal property that is subject to an unexpired lease.

X  /s/ Euna McGruder      X
**Euna McGruder**      Signature of Debtor 2
Signature of Debtor 1

Date  June 28, 2018      Date

RE 124-1 at PageID# 2487

In short, Plaintiff took the position to the bankruptcy court that she had no interest in any claims or lawsuits while simultaneously claiming in this case that she was owed a large sum of money. *See Lewis*, 141 F. App'x at 425; *White*, 617 F.3d at 479; *Kimberlin v. Dollar Gen. Corp.*, 520 F. App'x 312, 314 (6th Cir. 2013).

      2.    *The bankruptcy court adopted Plaintiff's inconsistent representation.*

On October 8, 2018, the bankruptcy court entered an order discharging Plaintiff's debts and requiring no distribution to any of her creditors. (Ex. 2, Order of Discharge, RE 124-2, PageID# 2500-01.) Pursuant to that court's order over $100,000 in debts were discharged. (RE 124-3, McGruder Bankruptcy Docket Sheet at PageID# 2504.) Thus, in discharging Plaintiff's debts, that court expressly relied upon and adopted Plaintiff's inconsistent representation that she had no interest in this instant cause of action.

      3.    *Plaintiff's omission was not the result of mistake or inadvertence.*

In determining whether there was a mistake or inadvertence on the part of the debtor, courts must "consider whether '(1) [the debtor] lacked knowledge of the factual basis of the undisclosed claims; (2) she had a motive for concealment;

and (3) the evidence indicates an absence of bad faith.'" *Id*. at 315 (*quoting White,* 617 F.3d at 478).

Here, Plaintiff cannot suggest that she lacked knowledge of her claim. She filed her cause of action in the District Court a mere six months before filing her Chapter 7 petition. Further, she had filed an EEOC claim in May of 2016 asserting the same claims. In September of 2017, she received a notice of her right to sue from the EEOC. (RE 124-4, EEOC Dismissal and Notice of Rights, PageID# 2506-07.) So, Plaintiff had pursued this claim for over two years with the assistance of at least two attorneys, she had been advised that she had a right to bring a federal lawsuit, and she had filed a lawsuit – all *before* filing her bankruptcy petition (in which she stated that no such claim existed). Thus, she had knowledge of the factual basis of her claim.

Furthermore, regarding a motive to conceal: "Courts generally consider that any Plaintiff who fails to disclose claims in bankruptcy has a motive for concealment: if the claim becomes part of the bankruptcy estate, then the proceeds could go toward paying her creditors, rather than going directly to the plaintiff." *Brown*, 2020 WL 291373 at *2. Given that Plaintiff's bankruptcy action discharged over $100,000 in debt, Plaintiff not only had a motive to conceal this cause of action, but the motive was a substantial one.

Accordingly, as the first two elements can be established, Plaintiff must be able to show a lack of bad faith in her concealment. *Id*. at 3 (*citing White*, 617 F.3d at 478, n. 4.). "In determining whether there was an 'absence of bad faith,' the court must look, in particular, at [the debtor's] attempts to advise the bankruptcy court of her omitted claim." *Vaughn*, 2014 WL 234200 at *4 (*citing White*, 617 F.3d at 478). "Since the bankruptcy system depends on accurate and timely disclosures, the extent of these efforts, together with their effectiveness, is important." *White*, 617 F.3d at 480.

Here, it is evident from the record in Plaintiff's bankruptcy case that she made no efforts to advise the bankruptcy court of her omitted claim. (RE 124-3, McGruder Bankruptcy Docket Sheet, PageID# 2502-05.) The record reflects no amendments to her petition and no subsequent notice of additional assets. (*Id*.) Therefore, Plaintiff cannot claim now that, in the approximately 3 months that her bankruptcy was pending, she made any attempts to advise the bankruptcy court of her omitted claim. Only now, after Metro filed its motion revealing her failure to disclose, has Appellee reached out to the bankruptcy trustee. But this falls well short of acting in good faith. *Brown v. Electrolux Home Prod.*, 2020 WL 291373, *4 (M.D. Tenn. 2020) (where "Plaintiff did not correct her omission until after Defendant filed the motion for summary judgment," which the District Court found "was too little, too late.").

Metro acknowledges that the timing of its motion to revise is not ideal, but Metro acted immediately upon discovering Plaintiff's failure to disclose. Ultimately, "Underlying the doctrine of judicial estoppel is the desire to protect the integrity of the judiciary, not individual litigants." *Teledyne Indus. v. N.L.R.B.,* 911 F.2d 1214, 1219–20 (6th Cir.1990). As such, even had Metro not raised the argument now (or even later on appeal), a court "could sua sponte consider whether judicial estoppel is appropriate under the facts presented." *DeMarco v. Ohio Decorative Prod., Inc.*, 19 F.3d 1432 (n. 5 and surrounding text) (6th Cir. 1994) (Table). Therefore, in the interest of preserving the integrity of the courts, it is likely that the District Court will dismiss with prejudice Appellee's case altogether.

### B. *Appellant presents a serious legal question regarding the District Court's abuse of discretion*.

With regard to the injunctive relief of reinstatement, the decision to grant or deny an injunction is reviewed under an abuse of discretion standard. *BCBS Mut. of Ohio v. BCBS Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997). The Sixth Circuit has stated that a court commits an abuse of discretion when it "relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *United States v. Hart*, 70 F.3d 854, 859 (6th Cir.1995). Moreover, the circumstances clearly show an abuse of discretion where the court

has taken "arbitrary action not justifiable in view of such situation and circumstances." *Balani v. INS*, 669 F.2d 1157, 1160-61 (6th Cir.1982).

### 1. *Displacement of another employee.*

At trial, the District Court correctly explained to the Parties that reinstatement would not be appropriate here because someone would still need to be displaced in order to reinstate Plaintiff. (The Court, Final Trial Tr. Vol V, RE 83 at 9.) The Court further stated, "[T]here's somebody in that job. That's why I asked Ms. Cour that question, because…I wasn't sure either lawyer was going to get that evidence in and I needed to make sure there was a record of that before I made a conclusion on this. So reinstatement, I don't think, is appropriate." (The Court, Trial Tr. Vol IV, RE 96 at PageID# 551.)

Now, in its August 18, 2022, Memorandum and Order awarding reinstatement, the District Court improperly states that it cannot assume the unrebutted facts in evidence still hold true, post-trial: "While Katie Cour testified at trial in December 2021 that another person was in Dr. McGruder's formerly held position, the court cannot assume such person continues to hold that position." (RE 116 at PageID# 2405.) In so doing, without further hearing, the court has substituted its own uncertainty for the unrebutted facts in evidence (unambiguous testimony from Metro's corporate representative at trial). Thus, the court has not

only contradicted its own stated concerns regarding the displacement of unrelated individuals, but it has disregarded uncontroverted proof as well.

And, in fact, since the 2015-2016 school year there has been a significant reorganization of the central office. (Clay Decl., RE 118-1 at ¶ 4, PageID# 2410.) There is no longer an "Executive Officer of Priority Schools" position. (*Id.* at ¶ 5, PageID# 2410.) That role, once occupied by Plaintiff, has been subsumed into the larger role of Chief of Innovation, a position occupied by another employee, Ms. Perry. (Clay Decl., RE 118-1 at ¶ 6, PageID# 2410.) Furthermore, all Executive Officer and Executive Director positions in the areas of school support and school of innovation are currently filled. (*Id*. at ¶ 7, PageID# 2410.) In order to comply with the court's order, Metro would have to displace a current employee. (*Id*. at ¶ 8, PageID# 2410.) Thus, the District Court's original concerns regarding displacement of MNPS personnel were well-founded, and the injunctive relief of reinstatement was inappropriate.

### C. *Hostility between the parties.*

The District Court also correctly explained at trial that reinstatement would not be appropriate "not just because there's not that position available anymore, but it's also, there's some law that cautions concerns where…the dynamic would be not a healthy one." (The Court, Trial Tr. Vol IV, RE 96 at PageID# 2164.) Further, "The downside of reinstatement is that you are forcing people who have

been in litigation against one another for years to work together again and that can cause lots of problems." (Trial Tr. Vol III, RE 93 at PageID# 1553-54.)

At trial, someone who is admired by Parties, Dorothy Gunn, testified that "The environment was toxic, not supportive. Very negative. Mrs. McGruder was often derogatory towards the principals and secretaries and the way she spoke to people…was definitely unprofessional." (Trial Tr., Vol III, RE 93 at PageID# 1561.) This is the same witness about whom Appellee's counsel told the jury: "Dorothy Gunn is -- was a very truthful witness. And you can actually believe everything she said." (Trial Tr. Vol IV, RE 96 at PageID# 2194.)

But the District Court now states that "Metro's argument against reinstatement based on its proof at trial of Dr. McGruder's 'unprofessional conduct' is not well taken." (Memo. and Order, Reinstatement, RE 116 at PageID# 2405.) But the court provides no analysis to support such a finding. Neither does the court indicate why its Order is now in diametric contradiction to its views repeatedly expressed from the bench at trial.

Moreover, Appellee's language in her response to Appellant's motion to stay accusing Metro of dishonesty and bad faith, (RE 121 at PageID# 2428), the vituperative language throughout her response to Appellant's motion to revise, (RE 128), as well as the "litigation hold" letter she sent to Appellant's legal department today which threatens future legal action, are all in direct contradiction to her claim

that there are no hostilities between the parties. There are, and the District Court's observation at trial that "the dynamic would be not a healthy one" (Trial Tr. Vol IV, RE 96 at PageID# 2164) was correct – and reinstatement is not appropriate.

### D. Abuse of Discretion.

At trial, the District Court had before it uncontroverted proof of the unworkability of reinstatement in this case. The statements of the court at trial evinced the opinion that reinstatement is not appropriate. The court correctly applied the law when it acknowledged at trial that, because another MNPS employee who had no involvement in this matter would have to be displaced and because hostility between the parties existed, reinstatement would not be feasible or appropriate. *E.g., Shore v. Fed. Exp. Corp.*, 777 F.2d 1155, 1159 (6th Cir. 1985) (displacing someone and hostility between the parties made reinstatement inappropriate); *see also Fuhr v. Sch. Dist. of City of Hazel Park*, 364 F.3d 753, 761 (6th Cir. 2004); *Henry v. Lennox Indus., Inc.*, 768 F.2d 746, 753 (6th Cir. 1985).

But now the court has disregarded the uncontroverted proof at trial on this subject and, instead, has relied upon clearly erroneous findings of fact. As discussed above, it has now reversed course with very little, if any, explanation, leaving Metro with no opportunity to litigate the issue. This decision is not justifiable in view of the circumstances and constitutes an abuse of discretion. *Balani*, 669 F.2d at 1160-61 (6th Cir.1982); *Hart*, 70 F.3d at 859.

Because it is clear and uncontroverted that no comparable position is available for Plaintiff and because, as the court correctly pointed out at trial, the dynamics of reinstatement in this case would not be healthy, "the equities favor maintaining the status quo" by staying the court's Order of reinstatement pending appeal. *Simon Property Grp.*, 262 F. Supp. 2d at 798 (E.D. Mich. 2003) (citing *Griepentrog*, 945 F.2d at 154).

## II. The Balance of Harms – Including to the Public Interest – Weighs Strongly in Favor of a Stay.

In light of the likelihood of success on appeal, the Appellant's burden of establishing irreparable harm is lighter than it would be absent such a strong likelihood of success on appeal. *Griepentrog*, 945 F.2d at 153. Regardless, the second, third, and fourth factors weigh heavily in favor of a stay as well.

"When evaluating the harm that may be suffered by either party, a court must consider: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and, (3) the adequacy of the proof provided." *Simon Prop. Grp.*, 262 F. Supp. 2d at 798. And "Potential harm that is compensable or otherwise may be corrected by later rulings of the court are not irreparable..." *Id.* In other words, where the plaintiff can be compensated at a later time for any potential "injury" that may exist during a stay renders the injury reparable:

> In evaluating the degree of injury, it is important to remember that "[t]he key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily

expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."

*Griepentrog*, 945 F.2d at 154 (quoting *Sampson v. Murray,* 415 U.S. 61, 90 (1974)).

In this case, there is a likelihood of substantial irreparable harm to the Metropolitan Government of Nashville in the absence of a stay, while Plaintiff cannot show any irreparable harm if a stay is granted. The court's order will require the School System to reinstate Plaintiff "to her prior position or comparable central office position with Metro within thirty (30) days" (by next Friday) (RE 116 at PageID# 2405.) But, as stated above, MNPS has no such position to offer. The Executive Officer of Priority Schools position no longer exists (and has not existed since 2020), and there are no available comparable positions in central office. MNPS will therefore be required to remove an individual from their position or create a new position to make way for Plaintiff. (Clay Decl., RE 118-1 at ¶ 8, PageID# 2410.) This will cause a substantial disruption to the efficient operation of the school district, *id.*, which will only serve to exasperate the already unhealthy dynamic surrounding the parties.

Furthermore, the public interest also weighs heavily in favor of a stay. First, the public has an interest in the integrity of the judicial system, so the same

arguments in favor of judicial estoppel weigh heavily in favor of a stay. Second, the efficient operation of the schools is one of the primary responsibilities of the central office. With this in mind, MNPS meticulously selects the best candidates for each of these important roles. Any disruption in the central office could irreparably harm the efficient operation of the schools. Such a disruption necessarily reverberates throughout the school system resulting in irreparable harm to the primary beneficiaries of the school system: the students. This would be particularly disruptive at this time given the recent TVAAS scores of some of the district's priority schools. (Clay Decl., RE 118-2 at ¶¶ 11-12, PageID# 2410-11.) The district is experiencing vast improvement at these schools and stability is more important than ever in maintaining the upward trajectory. *Id.*

On the other hand, Plaintiff will suffer no irreparable harm if a stay is granted because she can be fully compensated for any such harm if Metro is unsuccessful on appeal. In other words, Plaintiff's salary can be sufficiently calculated such that any financial effect of this stay can be wholly cured. Thus, if the injunction is upheld on appeal and Plaintiff subsequently receives a position in the central office, a period of backpay may be awarded if appropriate to include the duration of the Metropolitan Government's appeal.

### III. No Need for a Supersedeas Bond.

With regard to any money which may become due and owing to Plaintiff as

a result of this stay, there is no need for a supersedeas bond to secure that potential money judgment. Metro is recognized as a governmental entity that has the ability to pay its judgments. *E.g.*, *Villegas v. Metro,* Docket No. 3:09-CV-0219, No. 203 (M.D. Tenn. 2011) (staying execution of judgment without requiring a bond).

"Rules 62(d) entitles a party who files a satisfactory supersedeas bond to a stay of money judgment as a matter of right," but it "in no way necessarily implies that filing a bond is the only way to obtain a stay." *Arban v. W. Pub. Corp.*, 345 F.3d 390, 405 (6th Cir. 2003) (citing FED. R. CIV. P. 62(d)). In *Arban*, the court noted that "an inflexible requirement of a bond would be inappropriate…where the defendant's ability to pay the judgment is so plain that the cost of the bond would be a waste of money." *Id.* (quoting *Olympia Equip. v. Western Union*, 786 F.2d 794, 796 (7th Cir. 1986)). Metro's ability to pay any judgment justifies not requiring a supersedeas bond in this case.

## Conclusion

For all of these reasons, Metro respectfully requests that this Court simply maintain the *status quo* by staying the District Court's Order granting reinstatement, pending a resolution of the judicial estoppel issues below, and pending review by this Court of the reinstatement issues discussed above on the merits.

Respectfully submitted,

THE DEPARTMENT OF LAW OF THE
METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY
WALLACE W. DIETZ (#09949)
DIRECTOR OF LAW

*/s/ J. Brooks Fox*
J. Brooks Fox, # 16096
Attorney for the Defendant-Appellant
Metropolitan Courthouse, Suite 108
P.O. Box 196300
Nashville, Tennessee 37219-6300
(615) 862-6375

## Certificate of Service

This is to certify that a copy of the foregoing was served via the court's electronic filing system to: Brian Winfrey, The Winfrey Firm, 810 Broadway, Suite 500, Nashville, TN 37203, on September 9, 2022.

*/s/ J. Brooks Fox*
J. Brooks Fox