Case No. 22-5761

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

DR. EUNA MCGRUDER,

        Plaintiff - Appellee,

v.

METROPOLITAN GOVERNMENT OF NASHVILLE AND
DAVIDSON COUNTY, TN,
dba Metropolitan Nashville Public Schools,

        Defendant - Appellant.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
Case No. 3:17-CV-1547

---

**APPELLEE'S BRIEF OF DR. EUNA MCGRUDER**

        Respectfully submitted,

        /s/ Brian C. Winfrey
        Brian C. Winfrey (#025766)
        2021 Richard Jones Rd, Ste 310-A
        Nashville, TN 37215
        Counsel for Plaintiff Appellee
        (615) 601-1276

# **TABLE OF CONTENTS**

TABLE OF CONTENTS...............................................................................i

TABLE OF AUTHORITIES…………………………………………………. v

STATEMENT REGARDING ORAL ARGUMENT...............................1

STATEMENT OF JURISDICTION.........................................................2

STATEMENT OF THE ISSUES ............................................................3

STATEMENT OF THE CASE.................................................................4

SUMMARY OF THE ARGUMENT……………………………………...12

ARGUMENT…………………………………………………...…………12

    I.  This Appeal Only Concerns the Reinstatement Award, and This Court
        Lacks Justification to Consider the Judicial Estoppel Argument………..12

        A. Rule 3(c) limits this appeal to the reinstatement award, and the
           judicial estoppel argument cannot be considered…………. …12

        B. Appellant did not properly raise or preserve for appeal its judicial
           estoppel argument at the district court ………………………… 14

        C. The waver rule bars appellate review to Appellant's judicial
           estoppel argument and no grounds for exception exists ……. 16

           1. Judicial estoppel necessitates a determination of facts, which
               favors enforcement of the waiver rule……………………17

           2. The appropriateness or application of judicial estoppel is not
               clear and beyond doubt, which favors enforcing the waiver
               rule……………………………………………………… 17

3.  The waiver rule's enforcement will not result in a miscarriage of justice, which favors enforcing the waiver rule…………………………………………………….. 20

4.  McGruder had a right to have judicial estoppel considered by both a district court and an appellate court, thus the waiver rule is required here……………………………….21

D. No other legal rules confer this Court justification to consider the judicial estoppel argument in this appeal…………………….22

II. The Reinstatement Award Cannot be Reversed as an Abuse of Discretion in this Case …………………………………………………………25

A. The Sixth Circuit is highly deferential to district court reinstatement orders……………………………………………………....25

B. The district court's award of reinstatement was not an abuse of discretion…………………………………………………… 26

1.  The district court correctly started by noting the make whole goals of Title VII and McGruder's presumptive entitlement to reinstatement…………………………………………....27

2.  The district court determined "there are no exceptional circumstances in the present matter that make the chances for a satisfactory employment relationship unlikely"…..………28

a.  Displacement of another employee and Metro's capacity to reinstate ………………………………………….28

1.  Metro put on no proof of displacement at trial or in post-trial pleadings…………………………………29

2.  The district court's refusal to assume displacement would result was wise because it is proven that displacement would not have been demanded here…………………………………………………32

3.  Even if the reinstatement required displacement, which it does not and would not, the reinstatement award would still need to be affirmed…………… 33

a. Displacement is not an automatic bar to reinstatement…………………………………… 33

b. Appellant's displacement argument is invalidated by acts of bad faith ……………………………..34

b. Hostility Between the Parties …………………………36

1. The district court correctly recognized that the actors responsible for the retaliatory termination are no longer employed by MNPS ………………………..37

2. The district court correctly recognized that hostility assumed as a product of litigation is not a sufficient reason to deny reinstatement ………………………38

3. The district correctly rejected the vague claims of "unprofessional conduct" as grounds to deny reinstatement ………………………………………40

III. Reinstatement Should Be Affirmed and Instructed Immediately...……...41

IV. In the Alternative, Judicial Estoppel Should Not Apply in this Case….42

A. The finding of liability in the verdict should remain in effect and enforced…………………………………………………………42

B. The reinstatement award is not subject to judicial estoppel….43

C. The attorney's fees award is not subject to judicial estoppel...46

D. Judicial estoppel should not apply or be narrowly tailored ….49

1. Belated timing of the judicial estoppel assertion…………. 50

2. Metro Nashville moves its motion with unclean hands……51

3. Inadvertence or mistake …………………………………...54

4. Further, in the alternative, judicial estoppel should not be applied to eliminate the rights and interest of the trustee, creditors, or counsel…………………………………………………..55

CONCLUSION.......................................................................................56

CERTIFICATE OF COMPLIANCE AND SERVICE …………………………57

ADDENDUM .......................................................................................58

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Abell v. Sky Bridge Resources*, *LLC*, 715 Fed. Appx 463 (6th Cir. 2017)……… 16, 17

*Altman v. Altman*, 653 F.2d 755 (3rd Cir. 1981) …………………………………...22

*Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975) …………………………….27

*Am. Meat Inst. V. Pridgeon*, 724 F.2d 45 (6th Cir. 1984) ………………….…14, 15

*Barger v. City of Cartersville*, 348 F.3d 1289, 1297 (11th Cir. 2003) …...…18, 44, 46

*Barachkov v. Lucido*, 151 F. Supp.3d 745 (E.D. Mich. 2015) …...………….....45, 46

*Bennett v. CMH Homes, Inc*., 2012 WL 2498880 (M.D. TN 2012) ………….…..15

*Bob Jones University v. U.S.*, 461 U.S. 604 (1983) ………………………………43

*Bonner v. Perry*, 564 F.3d 424, 429 (6th Cir. 2009) …………………………….13, 14

*Browning v. Levy*, 283 F.3d 761 (6th Cir. 2002) …………………………………...49

*Burnes v. Pemco Aeroplex, Inc*., 291 F.3d 1282 (5th Cir. 2002) ……….18, 44, 46, 54

*Cancilla v. Experian Info. Solutions*, 2019 WL 5680338 (E.D. Mich. 2019) ……..23

*Carberry v. Monarch Marking Sys's, Inc.,* 30 Fed. Appx 389 (6th Cir. 2002) …….26

*Charles v. Daley*, 846 F.2d 1057 (7th Cir. 1988) ………....………………………… 48

*Crawford v. Roane*, 53 F.3d 750 (6th Cir. 1995)………………………………... 13

*Certified Restoration Dry Cleaning v. Tenke*, 511 F.3d 535 (6th Cir. 2007) ……...26

*DeMarco v. Ohio Decorative Products, Inc.*, 19 F.3d 1432 (6th Cir. 1994) ……….24

*Dickerson v. Deluxe Check Printers*, Inc. 703 F.2d 276 (8th Cir. 1983) …………. 39

*Eastman v. Union Pacific R.R.* Co., 493 F.3d 1151 (10th Cir. 2007) ……………..56

*Eckstein v. Cincinnati Ins.,* 469 F.Supp.455 …………………………………….. 49

*Eubanks v. CBSK Fin. Group*, 385 F.3d 894 (6th Cir. 2004) …………………20, 57

*Fairlane Car Wash, Inc. v. Knight Enters.*, 396 Fed. Appx. 281 (6th Cir. 2010) ... 15

*Fernandes v. Limmer*, 663 F.2d 619 (5th Cir. 1981) ……………………………… 47

*Fuhr v. Sch. Dist. of Hazel Park*, 364 F.3d 753 (6th Cir. 2004) ………..26-27, 33, 45

*Geier v. Richardson,* 871 F.2d 1310 (6th Cir. 1989) ……………………………….48

*Grise v. Allen*, 714 F. Appx. 489 (6th Cir. 2017) …………………………………….17

*Hayward v. Cleveland Clinic Found.*, 759 F.3d 601 (6th Cir. 2014) ……………16, 20

*In re B&P Baird Holdings, Inc.,* 759 F. Appx 468 (6th Cir. 2019)……………….. 53

*Jackson v. City of Albuquerque*, 890 F.2d 225 (10th Cir. 1989) …………………...37

*JGR, Inc. v. Thomasville Furniture Indus., Inc.*, 550 F.3d 529 (6th Cir. 2008) …….13

*Jones v. Ill. Centr. R. Co.*, 617 F.3d 843 (6th Cir. 2010) …………………………..26

*Kensu v. Corizon*, Inc., 5 F.4[th] 646 (6th Cir. 2021) ……………………………….. 26

*Killebrew v. CSX Transp., Inc.*, 2005 WL 1705636 (M.D. Ala. 2005)………... 46-47

*Kraemer v. Franklin and Marshall College*, 941 F.Supp. 479 (E.D. Pa. 1996) …..36

*Krystal Cadillac v. Gen. Motors Corp.*, 337 F.3d 314 (3rd Cir. 2003) ……………49

*Lett v. Reliable Ruskin*, 2006 WL 2056582 (M.D. Alabama 2006) ………...18, 45-47

*Lisa M. v. Leander Indep. Sch. Dist.*, 924 F.3d 205 (5th Cir 2019) ………………..26

*Louisville/Jefferson Co. v. Hotels.com*, 590 F.3d 381, 389 (6th Cir. 2009) ………..15

*Matthews v. Potter*, 316 Fed. Appx 518 (7th Cir. 2009) …………………………18, 44

*McKenna v. City of Philadelphia*, 2009 WL 10687689 (E.D. PA 2009)……... 18, 50

*McLarin v. Fisher*, 768 F.2d 98 (6th Cir. 1985) ………………………………  13-14

*Morgan v. The Arkansas Gazette,* 897 F.2d 945 (8th Cir. 1990) …………………..37

*Newburgh/Six Mile Ltd. v. Adlabs Films*, 483 Fed. Appx 85 (6th Cir. 2012) …...16-21

*New Hampshire v. Maine*, 121 S. Ct. 1808 (2001) ………………………………...49

*Noonan v. Cunard Steamship Co.*, 375 F.2d 69 (2nd Cir. 1967)…………………... 37

*Novosteel SA v. U.S*, 284 F.3d 1261 (Fed. Cir. 2002) ……………………………...13

*Osborn v. Griffin*, 865 F.3d 417 (6th Cir. 2017) …………………………………...51

*Parker v. Wendy's International*, 365 F.3d 1268 (11th Cir. 2004) ………………..55

*Reed v. City of Arlington*, 650 F.3d 571 (5th Cir. 2011) …………………………..55

*Reeves v. Claiborne Co. Bd. of Educ.*, 828 F.2d 1096 (5th Cir. 1987) ……………..36

*Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668 (7th Cir. 1993) …………37

*Ryan Op's G.P. v. Santiam-Midwest Lumber*, 81 F.3d 355 (3d Cir. 1996)…19, 49-51

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008) ………...…14-16, 20, 41

*Shore v. Fed Express Corp.*, 777 F.2d 1155, 1159 (6th Cir. 1985) …………26, 27, 36

*Suggs v. ServiceMaster Educ. Food Mgm't*, 72 F.3d 1228 (6th Cir. 1996) …….26-27

*Taft Broadcasting v. U.S*, 929 F.2d 240 (6th Cir. 1991) ………………...…. 18, 20

*Taylor v. Teletype Corp.*, 648 F.2d 1129, 1139 (8th Cir. 1981) ………………. 39-40

*Torres v. Oakland Scavenger Co.*, 487 U.S. 312 (1988) ………………………… 13

*Tramill v. United Parcel Service*, 10 Fed. App'x 250 (6th Cir. 2001) ……………. 26

*U.S. v. Felton*, 239 F.Supp.2d 122 (D. Mass. 2003) ………………………………42

*U.S. v. Glover*, 242 F.3d 333 (6th Cir. 2001) ………………………………………12

*U.S. v. Little*, 61 F.3d 450 (6th Cir. 1995)……………………………………… 37

*U.S. v. Means*, 133 F.3d 444 (6th Cir. 1998) ………………………………………12

*U.S. v. McCaskey*, 9 F.3d 368 (5th Cir. 1993) ………………………………………...53

*Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510 (6th Cir. 1991) ……………13

*Whorley v. Kuchera Industries, Inc.*, 2006 WL 8458443 (W.D. PA 2006) ……..19,49

*Velchez v. Carnival Corp.*, 331 F.3d 1207 (11th Cir. 2003) ………………………23

<u>Statutes and Rules</u>

28 U.S.C. § 1292 ………………………………………………………………2, 13

42 U.S.C. 2000e-5(k) ………………………………………………………………..48

42 U.S.C. § 1988 ………………………………………………………………………48

## STATEMENT REGARDING ORAL ARGUMENT

First, Dr. Euna McGruder submits that oral argument is not necessary regarding the propriety of the reinstatement order. At trial, the district court reserved ruling on reinstatement and afforded the parties the opportunity to file post-verdict pleadings of their positions. The trial judge made determinations that applied the correct law to the facts, which resulted in an award of reinstatement. The reinstatement award was not an abuse of discretion.

Second, oral argument is not needed to address Appellant's judicial estoppel argument because the issue is not part of this appeal. The issue was: (1) not identified as an issue in the Notice of Appeal; (2) was not raised or preserved at the district court level; and (3) is an issue and argument forfeited by the waiver rule.

In the alternative, if this Court is inclined evaluate the issue of judicial estoppel in this appeal, oral argument is requested and would aid the Court to: (1) evaluate which, if any, orders and awards are subject to the doctrine; and (2) evaluate whether, or to what extent, the doctrine applies in this case and the remaining disposition of this action.

## <u>STATEMENT OF JURISDICTION</u>

Plaintiff-Appellee McGruder brought this case in the district court under Title VII of the Civil Rights Act of 1964 ("Title VII"). A jury verdict and judgment in favor of McGruder was properly issued after litigation in the District Court of the Middle District of Tennessee. Venue and jurisdiction were proper in the district court.

The district court awarded McGruder reinstatement on August 18, 2022. Appellant filed a Notice of Appeal regarding the reinstatement award. Thus, this Court has jurisdiction under 28 U.S.C. § 1292(a)(1) related to the reinstatement order. Jurisdiction and venue are proper pursuant to Rules 3 and 4 of the Federal Rules of Appellant Procedure.

This Court does not have jurisdiction to evaluate the judicial estoppel argument inserted into Appellant's brief. The judicial estoppel argument therefore cannot be afforded appellate review in this appeal. No jurisdictional grounds are present for this Court to evaluate the judicial estoppel argument in this appeal.

## STATEMENT OF THE ISSUES

1. Was the award of reinstatement an abuse its discretion?

2. Does this Court have jurisdiction to consider judicial estoppel in this appeal because of the narrowly tailored Notice of Appeal only appeals the reinstatement order?

3. Does this Court have jurisdiction to consider judicial estoppel because the issue was not properly raised, preserved, or decided by the district court?

4. Is the judicial estoppel argument forfeited by the waiver rule? Should exception to the waiver rule be granted in this case?

5. In the alternative, can or should judicial estoppel be applied to vacate a verdict and eliminate all accountabilities to Metro Nashville in this case?

6. In the alternative, can or should judicial estoppel be applied to the awarded non- monetary remedy of reinstatement?

7. In the alternative, can or should judicial estoppel  be applied to the attorney's fees award?

8. In the alternative, should judicial estoppel be applied under the equitable considerations by this case, and if so, to what extent and scope?

9. In the alternative, if judicial estoppel applies, what is the proper disposition and remaining interests of trustee, creditors, and counsel?

## STATEMENT OF THE CASE

A. <u>MNPS hires McGruder as a Central Office Executive Officer in July 2015.</u>

Shortly before the 2015-2016 school year, Metro Nashville Public Schools ("MNPS" "Metro Nashville" "Metro" or "Appellant") hired Dr. Euna McGruder ("McGruder" or "Appellee"). (Motion for Summary Judgment Response, RE 28, PageID# 260). McGruder was hired as MNPS' Executive Officer of Priority Schools. (Id.). The job was created to dedicate an executive officer to support, assist, and develop "turnaround plans" for improving the academic performance at priority schools. (Id.). "Priority schools" are identified as low-performing schools in the bottom five percent (5%) statewide in terms of academic achievement. (Id.).

Prior to joining MNPS, McGruder's career was on a rising trajectory after successful employment stints in Baltimore, Newark, and Atlanta — where her work specialized in improving schools with economically and academically disadvantaged student populations. (Id.). McGruder brought twenty-four (24) years of school and district leadership experience to MNPS. (Id.).

At MNPS, McGruder only received positive performance feedback from MNPS and implemented plans to improve priority schools. (Id. at PageID# 261). McGruder did not receive a single reprimand or disciplinary action for performance or conduct during her tenure at MNPS. (Id.).

4

B. <u>On January 15, 2016, MNPS fires McGruder in violation of Title VII</u>

On January 15, 2016, MNPS fired McGruder for investigating and opposing racial discrimination and hostile work environment against teachers and students. (Verdict, RE 78, PageID# 523). The termination violated the Title VII rights of McGruder and was against the public interest. McGruder filed an EEOC charge in May 2016, and she filed a lawsuit against Metro Nashville in December 2017. (Complaint, RE 1, PageID# 1-6). The "actors responsible for her retaliatory termination, Katie Cour and Vanessa Garcia, are no longer employed by Metro." (Order, RE 116, Page ID# 2405).

C. <u>The unlawful termination causes McGruder to suffer economic, emotional, and career harms that drive her into bankruptcy.</u>

The unlawful termination caused McGruder to suffer severe economic, emotional, and career harms. The termination "derailed her rising career trajectory." (Order, RE 116, Page ID# 2404). McGruder was left "unable to secure comparable subsequent employment." She was compelled to relocate across multiple states and accept lower paying jobs of less status to survive. (Id.). McGruder fell from a six-figure salary as an executive school system administrator to five-figure pay as a school-level educator. (Id.). Uncontroverted trial proof proves that McGruder earned over $300,000 less than she would have earned at MNPS since the termination. (Order, RE 111, PageID# 2394).

In 2018, McGruder was compelled to explore bankruptcy due to the financial hardships flowing from the termination. (Declaration, RE 128-1, PageID# 2550-51). McGruder retained the legal services of Clark & Washington. (Id.). Clark & Washington maintains a high-volume bankruptcy practice. (Id.). During the consultation process, McGruder explained her life circumstances compelling her to seek debt relief. McGruder explained that she had an active lawsuit in Tennessee against MNPS. (Id.). The law firm attorneys and agents did not tell McGruder that her MNPS litigation could have any impact on her bankruptcy. McGruder, as a non-legal professional, did not perceive the proceedings to be remotely related. (Id.). McGruder's litigation against MNPS was regrettably omitted from the bankruptcy schedule prepared by Clark & Washington – which were submitted to the bankruptcy court. (Id.).

D. In December 2021, the litigation results in a jury verdict against MNPS.

Litigation was lengthy and prolonged. During the litigation, McGruder never made false representations about the existence of her bankruptcy – she was never asked about it once. (Id.). Metro did not take her deposition or inquire about whether she had filed for bankruptcy during discovery. (Id.). Metro did not research the bankruptcy filings of Plaintiff or move for judicial estoppel during discovery. (Motion to Revise, RE 125, PageID# 2509) (stating on 8/31/22 that "Metro has only just discovered" the bankruptcy at that time).

After reviving the litigation via reconsideration following an improper grant of summary judgment, trial was set and continued multiple times. (Id.). Metro did not research bankruptcy filings of Plaintiff or assert judicial estoppel between the dispositive motion period and trial. (Motion to Revise, RE 125, PageID# 2509).

Nearly six years after the unlawful termination, a jury trial concluded in this action on December 6, 2021. (Verdict, RE 78, PageID# 523). Metro did not make a Rule 50 motion or assert judicial estoppel during trial.

The jury found that MNPS unlawfully terminated McGruder. McGruder was awarded compensatory damages of $260,000.00. (Id.). On December 9, 2021, judgment on the verdict and compensatory damages award was entered by the district court in December 2021. (Judgment, RE 79, PageID# 524). Metro did not appeal on the merits or move to alter or amend concerning the propriety of the jury verdict, compensatory damages award, or judgment.

E. Post-trial pleadings for reinstatement and attorney's fees are moved.

At trial, the district court reserved ruling on the remedy of reinstatement and allowed post-verdict briefings to determine the appropriateness of a reinstatement award. (Transcript, RE 83, PageID# 551) ("But if the jury comes back and finds retaliation, I will give you the opportunity to file a motion that seeks whatever you want on the remedy of reinstatement…").

On December 14, 2021, McGruder moved for reinstatement; Metro filed papers in opposition in January 2022. (Reinstatement Motion, RE 82, PageID# 538- 542) (Response, RE 90, PageID# 1380-1383). McGruder also made a post-verdict motion for statutory attorney's fees, which was opposed by Metro. (Attorney's Fees Motion, RE 89, Page ID# 1318-1328).

F.  A series of awards against Metro are issued in the 2022 summer.

The post-trial motions remained pending judicial determination for several months. Between the verdict and 2022 summer, Metro did not research bankruptcy filings concerning McGruder or move for judicial estoppel. (Motion to Revise/Alter, RE 125, PageID# 2509).

A series of orders was issued that went against the interest of Metro.  On July 27, 2022, a $287,700.00 attorney's fees award was entered. (Order, RE 113, PageID# 2396 - 2400). The same day, McGruder's counsel reached out to Metro concerning the possibility of resolution or settlement – which would resolve the case and minimize any accruing attorney's fees demanded by litigation. (Correspondence, RE 128-2, PageID# 255). Metro was initially receptive to resolution or settlement after receiving the correspondence. (Id.).

On August 18, 2022, the district court awarded "Dr. McGruder the remedy of reinstatement to her prior position or comparable central office position with Metro within thirty (30) days from the date of entry of this Order."

(Order, RE 116, PageID# 2405). McGruder's reinstatement motion did not seek a promotion or pay increase. (Reinstatement Motion, RE 82, PageID# 538-542). The reinstatement award did not order a promotion or pay increase. (Order, RE 116, PageID# 2405). In the 9 months between trial and the reinstatement award, Metro did not research bankruptcy filings of McGruder or assert judicial estoppel. (Motion to Revise/Alter, RE 125, PageID# 2509).

G. <u>McGruder sends a letter asserting entitlement to reinstatement, and Metro responds with a series of legal maneuvers to deny her reinstatement.</u>

On August 22, 2022, McGruder's counsel delivered Metro correspondence informing it that "her plans are to join MNPS in a comparable central office position pursuant to the Order." (Letter, RE 128-3, PageID# 2555-57). The correspondence also requested information about the anticipated position title and pay, and Metro's plans concerning compliance with the order. (Id.). Metro responded: "For my clients and me, it's a matter of talking to everybody and weighing our options. I'll let you know when I find out something more from the powers that be." (Correspondence, RE 128-2, PageID# 2553). The "powers that be" at Metro chose to fight the reinstatement.

On August 25, 2022, Metro filed: (a) a Notice of Appeal only regarding the "Order entered August 18, 2022 awarding Plaintiff reinstatement"; and (b) Motion to Stay Reinstatement pending appeal. (Notice of Appeal, RE 117,

PageID# 2406- 07) (Motion to Stay Reinstatement, RE 118, PageID# 2408). Neither referenced judicial estoppel as an issue in the case or appeal.

On August 29, 2022, Plaintiff swiftly and strongly opposed the stay motion – highlighting Metro's lack of merit for the appeal or justification for a stay. (Response, RE 121, PageID# 2421-2436).

McGruder received Metro's tactics as retaliatory maneuvers. McGruder's perception of improper motivation and retaliatory animus is not rooted in speculation. (Correspondence, RE 128-2, PageID# 2552) (Revise Response, RE 128, PageId# 2529-2549, 1236). Specifically, in response to August 22nd correspondence and the August 18th reinstatement order, Metro informed McGruder's counsel that:

> "We're not going to be able to work out a settlement. **Whatever chances there were earlier just got blown up by the court's order of reinstatement last week.** We're going to seek an immediate appeal of that decision…." (Id.).

But Metro did not stop at appealing the reinstatement order and seeking stay pending appeal. After receiving McGruder's strong opposition that put its stay petition in peril, Metro responded by: (1) researching bankruptcy filings for the first time; (2) filing a Rule 54-based "motion to revise" the verdict and other awarded remedies under judicial estoppel; and (3) filing a reply brief to the stay motion mentioning judicial estoppel. (Motion to Revise/Alter, RE 125,

PageID# 2509) (Reply to Stay, RE 127, PageID # 2527).[1] August 31, 2022 is the first time Metro uttered judicial estoppel. (Id). McGruder received these actions as retaliatory and improperly motivated. (Revise Response, RE 128, PageId# 2529-2549, 1236).

On September 9, 2022, Metro's "motion to revise" was denied by the district court. (Order, RE 131, PageID# 2563). The merits of the judicial estoppel assertion were not decided by the district court "because [Metro] filed its notice of appeal before filing the instant motion, divesting this Court of jurisdiction to consider it." (Id.) Separately, the district court granted a stay of reinstatement pending appeal – citing the existence of a judicial estoppel argument and appeal as its grounds for granting stay. (Order, RE 132, PageID# 2564-66). (finding "Metro has raised a serious legal question regarding the applicability of judicial estoppel" … Therefore, the Court finds this element weighs heavily in favor of granting a stay").

Appellant did not amend its Notice of Appeal to assert judicial estoppel. Metro also did not file a new Notice of Appeal concerning the denial of its Rule 54 motion.

---

[1] In its Reply, Metro asserted that McGruder's former job is "now defunct" and claimed that the job occupied by Renita Perry is not "the same job as her former role at MNPS. (Reply, RE 127, Page ID# 2524-2525).

## SUMMARY OF THE ARGUMENT

The only issue in this appeal is whether the district court abused its discretion in awarding reinstatement – which it did not do. This Court lacks jurisdiction and justification to consider the judicial estoppel argument in this appeal for multiple reasons. In the alternative, judicial estoppel is legally and equitably inappropriate and inapplicable.

## ARGUMENT

**I.    The Appeal Only Concerns the Reinstatement Award, and This Court Lacks Jurisdiction or Justification to Consider Judicial Estoppel in this Appeal.**

The judicial estoppel argument inserted into Appellant's brief cannot be afforded appellate review. For several straightforward reasons, this Court lacks the jurisdiction and justification to consider the argument in this appeal.

### A.  Rule 3(c) limits this appeal to the reinstatement award, and the judicial estoppel argument cannot be considered.

Federal Rule of Appellate Procedure 3(c) provides that a notice of appeal must designate the judgment, order, and issues being appealed. *U.S. v. Glover*, 242 F.3d 333, 335 (6th Cir. 2001). Compliance with this Rule "is both a mandatory and jurisdictional prerequisite." *Id.* (*citing U.S. v. Means*, 133 F.3d 444, 448 (6th Cir. 1998). The Supreme Court holds that a court "may not waive the jurisdictional requirements of Rules 3 and 4, even for 'good cause shown', if it finds that they have not been met." *Id.* (*citing Torres v. Oakland Scavenger*

*Co*., 487 U.S. 312, 317 (1988). The Sixth Circuit demands "strict obedience" to the Rule even if it "may have harsh results in certain circumstances." *Id*.

Under this Rule, "a court of appeals has jurisdiction only over the areas of judgment specified in the notice of appeal as being appealed." *Bonner v. Perry*, 564 F.3d 424, 429 (6th Cir. 2009) (*citing JGR, Inc. v. Thomasville Furniture Indus., Inc*., 550 F.3d 529, 532 (6th Cir. 2008) (both barring appellate review to issues not raised on the notice of appeal). "If an appellant chooses to designate specific determinations in his notice of appeal – rather than simply appealing the entire judgment – only the specified issues may be raised on appeal." *Wilson v. Firestone Tire & Rubber Co*., 932 F.2d 510, 516 (6th Cir. 1991) (*citing McLarin v. Fisher*, 768 F.2d 98, 102 (6th Cir. 1985); *Crawford v. Roane*, 53 F.3d 750, 752 (6th Cir. 1995).

The face of Metro's Notice of Appeal limits this appeal to the "Order entered August 18, 2022 awarding Plaintiff reinstatement." (Notice of Appeal, RE 117, PageID #2406). The appeal is petitioned pursuant to 28 U.S.C. § 1292(a)(1) – which only concerns the appeal of interlocutory orders. (Id.). Judicial estoppel is not identified on the Notice of Appeal. (Id.). And Metro did not appeal the denial of its Rule 54 motion to revise – where it first uttered judicial estoppel. *Bonner*, 564 F.3d at 429 (holding that for a party to appeal such an issue "it must make sure to file a notice of appeal or amended notice of

appeal, that encompasses that disposition.").

It follows, therefore, that this Court does not have jurisdiction to consider the judicial estoppel argument in this appeal. *Wilson*, 932 F.2d at 516; *McLarin*, 768 F.2d at 102; *Bonner*, 562 F.3d at 429. But there are additional reasons judicial estoppel cannot be decided by the appellate court.

B. <u>Appellant did not properly raise or preserve for appeal its judicial estoppel</u> argument at the district court.

The Sixth Circuit holds that arguments or issues first presented to the district court in a reply, motion to alter or amend or revise judgments, or reconsider are not deemed "raised" or "preserved for appeal." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552  (6th Cir. 2008) (holding party "failed to properly raise the issue" by first raising argument in reply/motion to alter or amend) (*citing Novosteel SA v. U.S*, 284 F.3d 1261 (Fed. Cir. 2002) (holding issue first raised in reply brief waived); *Am. Family Prepaid Legal v. Columbus Bar Assn*, 498 F.3d 328, 335 (6th Cir. 2007) (holding issue first raised in motion to alter or amend judgment not preserved for appeal); *Am. Meat Inst. V. Pridgeon*, 724 F.2d 45, 47 (6th Cir. 1984) (issue first raised in reconsideration motion waived).

In December 2021, a jury found that MNPS violated Title VII and judgment was entered. (Verdict, RE 78, PageID# 523) (Judgment, RE 79,

PageID# 524). MNPS did not argue judicial estoppel to the district court between the 2017 filing of the lawsuit and December 2021 verdict. Appellant did not argue judicial estoppel in the 9-months between the verdict and August 25, 2022 Notice of Appeal. The August 25th Notice of Appeal does not appeal on judicial estoppel claims. On August 31, 2022, Appellant made its first judicial estoppel assertion in: (1) Rule 54 motion to revise, which is effectively a motion to alter or amend; and (2) Reply brief to its motion to stay reinstatement – despite failing to argue judicial estoppel in its stay motion. (Motion to Revise, RE 125, PageID# 2509) (Reply to Stay, RE 127, PageID# 2527).[2]

Judicial estoppel was never mentioned until the August 31st reply and motion to revise/alter or amend. The district court did not decide the merits of its belated assertion procedural grounds. Thus, the argument was not raised or preserved for appeal at the district court. *Scottsdale*, 513 F.3d at 553; *Am. Family Prepaid Legal*, 498 F.3d at 335; *Am. Meat Inst.,* 724 F.2d 45 at 47.

Accordingly, the judicial estoppel argument inserted into Appellant's appellate brief is simply beyond the jurisdiction of this Court to consider in this appeal.

---

[2] Appellant's Rule 54 "motion to revise" seeks the same relief as a motion to alter or amend judgment and must be construed as a similar form of pleading. *Bennett v. CMH Homes, Inc*., 2012 WL 2498880, *2 (M.D. TN 2012) (applying same standards for a Rule 54 motion as a motion to alter or amend judgment) (*citing Louisville/Jefferson Co. v. Hotels.com*, 590 F.3d 381, 389 (6th Cir. 2009).

C. <u>The waiver rule bars appellate review to Appellant's judicial estoppel argument and no grounds for the grant of exception exists.</u>

The Sixth Circuit holds that "arguments not raised before the district court are deemed waived on appeal to this court." *Newburgh/Six Mile Ltd. Pntsh'p II v. Adlabs Films, USA Inc*., 483 Fed. Appx 85, 90 (6th Cir. 2012) (*citing*, 513 F.3d at 552. "Absent a legitimate excuse, an issue that was not raised at the district court generally will be forfeited." *Id*. This general rule is known as the waiver rule. *Id*.

The Sixth Circuit has a long history of enforcing the waiver rule against issues not properly raised, preserved, and ruled upon first by the district court. *Newburgh*, 483 Fed. Appx at 90 (applying waiver rule to argument not properly or timely raised to district court); *Scottsdale*, 513 F.3d at 552 (same); *Abell v. Sky Bridge Resources*, *LLC*, 715 Fed. Appx 463 (6th Cir. 2017) (same); *Hayward v. Cleveland Clinic Found*., 759 F.3d 601 (6th Cir. 2014) (same). Although the appellate court has the authority to grant exception to the waiver rule, "[t]his court exercises such discretion very rarely and generally focuses on whether the issue was properly raised before the district court." *Newburgh*, 483 Fed. Appx at 90.

Four (4) factors must be evaluated in considering whether to grant exception to the waiver rule: "(1) whether the issue newly raised on appeal is a question of law, or whether it requires or necessitates a determination of facts;

(2) whether the proper resolution of the new issue is clear and beyond doubt; (3) whether failure to take up the issue for the first time on appeal will result in a miscarriage of justice or a denial of substantial justice; and (4) the parties right under our judicial system to have the issues in their suit considered by both a district judge and an appellate court." *Id*. (citation omitted).  Each factor favors enforcing the waiver rule here.

1. Judicial estoppel necessitates a determination of facts, which favors enforcing the waiver rule.

Where an issue requires or necessitates a determination of facts, the Sixth Circuit "counsels against reaching the issue" on appeal and enforces the waiver rule. *Newburgh/Six Mile Ltd,* 483 Fed. App'x at 91 (finding that a question of fact compels enforcement of the waiver rule) (*citing Fairlane Car Wash, Inc. v. Knight Enters*., 396 Fed. Appx. 281, 287-88 (6th Cir. 2010); *Abell v. Sky Bridge Resources, LLC*, 715 Fed. Appx. 463, 473 (6th Cir. 2017) (applying waiver rule to issue that was "entirely a question of fact, not one of law"). Judicial estoppel inherently demands a determination of facts. *Grise v. Allen*, 714 F. Appx. 489, 494 (6th Cir. 2017). Thus, the first factor strongly favors enforcement of the waiver rule.

2. The appropriateness or application of judicial estoppel is not clear and beyond doubt, which favors enforcing the waiver rule.

For issues that are not clear and beyond doubt, the Sixth Circuit favors

enforcing the waiver rule. *Newburgh/Six Mile Ltd,* 483 Fed. App'x at 91; *Taft Broadcasting v. U.S*, 929 F.2d 240, 245 (6th Cir. 1991) (applying waiver rule where case was "complex and has little precedent to support either position").

Nothing is clear about the application or appropriateness of judicial estoppel in this unique case. First, it is not clear whether judicial estoppel could or should apply to McGruder's awards that would add no monetary value to the trustee, creditors, or bankruptcy such as: (a) the on-paper verdict finding liability; (b) the reinstatement award; and (c) the attorney's fees award. The appellate courts evaluating the application of judicial estoppel to claims that add no monetary value to the bankruptcy have consistently found the doctrine inapplicable and inappropriate. *Burnes v. Pemco Aeroplex, Inc*., 291 F.3d 1282, 1289 (5th Cir. 2002); *Barger v. City of Cartersville*, 348 F.3d 1289, 1297 (11th Cir. 2003); *Matthews v. Potter*, 316 Fed. Appx 518, 524 (7th Cir. 2009); *See also*, *Lett v. Reliable Ruskin*, 2006 WL 2056582, at *7-8 (M.D. Alabama 2006).

Second, it is not clear whether the equitable doctrine of judicial estoppel can or should be used to impose a nuclear sanction against McGruder while rewarding Metro Nashville a windfall from all accountabilities after a jury verdict. *McKenna v. City of Philadelphia*, 2009 WL 10687689, *3 (E.D. PA

2009) ("[plaintiff's] failure to list this action as an asset in his bankruptcy proceeding, even if assumed to be done in bad faith, cannot justify applying the doctrine of judicial estoppel to overturn a jury verdict in [plaintiff's] favor") ("To sanction [plaintiff] by dismissing his claims in this suit, which have already been found meritorious by a jury, would be neither appropriate nor narrowly tailored to the harm at issue"). Because judicial estoppel "is only to be applied when no lesser sanction would adequately remedy the damage done," it is not clear whether this situation supports vacating the verdict and removing all awards *or* whether a lesser sanction (or no sanction) is more appropriate here. *Id*.; *Whorley v. Kuchera Industries, Inc*., 2006 WL 8458443, *3 (W.D. PA 2006) ("Judicial estoppel … is always discretionary … and does not require dismissal of a claim every time an inconsistent position is taken by a party").

Third, it is not clear whether the equitable doctrine of judicial estoppel is appropriate or applicable in this case because: (a) evidence suggests that Metro's judicial estoppel motion was a tactical move made with unclean hands, bad faith, and improper motives; and (b) no evidence indicates that McGruder's errors were made with a deliberate intent to deceive, rather are the result of mistake or inadvertence. *Ryan Op's G.P. v. Santiam-Midwest Lumber*, 81 F.3d 355, 365 (3d Cir. 1996) (holding judicial estoppel "is not a sword to be wielded by adversaries unless such tactics are necessary to secure substantial equity" and

"is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims"); *Eubanks v. CBSK Fin. Group*, 385 F.3d 894, 898 (6th Cir. 2004) (judicial estoppel "inappropriate when the omissions are the result of mere mistakes or inadvertent conduct"). Further, even if the doctrine was applied against McGruder's monetary remedies, the prospective disposition and remaining interests of other innocent parties is unclear.

Thus, the second factor also favors enforcing the waiver rule.

3.  <u>The waiver rule's enforcement will not result in a miscarriage of justice, which favors enforcing the waiver rule.</u>

Where the party "had ample opportunity to raise the issue to the district court … but failed to do so," the Sixth Circuit holds that a miscarriage of justice will not result by enforcing the waiver rule. *Scottsdale*, 513 F.3d at 553; *Hayward*, 759 F.3d at 615 (no miscarriage of justice where party "had ample opportunity" to raise the issue and "failed to do so"); *Newburgh*, 483 Fed. Appx at 90-91 (same); *Taft*, 929 F.2d at 245 (same). Appellant had years of litigation and 9 months post-trial to raise a judicial estoppel argument to the district court, and it failed to do so. This case is procedurally no different than *Scottsdale*, *Newburgh*, *Hayward*, or *Taft* and demands the same conclusion. *Id*.

Enforcing the waiver rule will not result in anything resembling a "miscarriage of justice." A jury determined that Metro Nashville unlawfully

fired McGruder for opposing racial discrimination against students and teachers. Substantial damages and other remedies were awarded. Few things more important to protecting the integrity of the judicial process than: (1) honoring a jury verdict; and (2) holding violators of federal laws accountable with legal sanction. Enforcing the waiver rule here would simply result in Metro Nashville being held accountable for its proven Title VII violations to the person it harmed – which is not a miscarriage of justice, rather is the definition of justice.

The third factor also favors enforcement of the waiver rule.

4.  <u>McGruder had a right to have judicial estoppel considered by both a district judge and an appellate court, thus the waiver rule is favored.</u>

The Sixth Circuit recognizes that parties have a right for determinations to be made first by the district court instead of the appellate court. *Newburgh*, 483 Fed. Appx. at 91 (recognizing the right to a district court decision and determination). Courts hold that this important legal and procedural right should not be indiscriminately denied. *Id*. For the appellate court to rule on the judicial estoppel argument first, McGruder would be denied this important procedural right. Thus, the fourth factor also favors enforcing the waiver rule.

In the end, the judicial estoppel argument is forfeited by the waiver rule and no factors support the grant of exception.

D.  <u>No other legal rules confer this Court justification to consider the judicial estoppel argument in this appeal.</u>

Federal courts treat judicial estoppel motions as any other petition to the courts. *Altman v. Altman*, 653 F.2d 755, 758 (3rd Cir. 1981). Procedural rules must be followed, and judicial estoppel arguments are waived if not first raised in the district court absent proving the prerequisite elements for the grant of exception – including showing "exceptional circumstances" and a resulting "miscarriage of justice. *Id.* (refusing to consider judicial estoppel issue when raised for the first time one appeal due to defendant's failure to meet procedural prerequisites). No procedural rule or precedent exempts judicial estoppel motions from the ordinary rules of court. *Id.*

For the judicial estoppel argument to be considered in this appeal, Metro Nashville's was obliged to move its motion within the procedural and appellate rules. Appellant was obligated to raise and preserve the issue at district court, which it did not do. Appellant was obligated to identify judicial estoppel on the Notice of Appeal, which it did not do. Appellant was obligated to appeal the denial of its Rule 54 motion, which it did not do. Despite failing in every conceivable way to confer proper jurisdiction to this court, Appellant attempts to create jurisdictional authority with smoke and mirrors.

Metro Nashville's motion seeks to sidestep the procedural rules by

claiming that a judicial estoppel motion "may be invoked at any time, even on appeal," as if such motions are beyond the dictates of the procedural and appellate rules. (Appellant's Brief, p. 13). This claim is unsupported and unmeritorious. Appellant claims that its judicial estoppel motion can be considered on appeal because this Court "could *sua sponte* consider whether judicial estoppel is appropriate under the facts presented." (Id.). This assertion ignores the definition of *sua sponte* and is inapplicable.

The definition of *sua sponte* is "[w]ithout prompting or suggestion, on its own motion. *Velchez v. Carnival Corp.*, 331 F.3d 1207, 1210 (11th Cir. 2003) (*quoting* Black's Law Dictionary 1437 7th ed. 1999) (defining *sua sponte* as "of one's own accord")); *Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006) (*sua sponte* is defined as "on its own motion"). Federal courts recognize that it is not *sua sponte* for a court to issue a ruling prompted by a litigant's motion. *Velchez,* 331 F.3d at 1210 ("That dictionary definition of *sua sponte* does not fit these circumstances, because the court was prompted by [a litigant] to remand"); *Cancilla v. Experian Information Solutions*, 2019 WL 5680338, *2 (E.D. Mich. 2019) ("If the Court grants a motion,it hasn't acted *sua sponte*") ("If there was a motion by the defendant before the court, then the court could not have considered it *sua sponte*") (internal citation omitted).

Here, the judicial estoppel issue was prompted by Appellant's motion

asking the Court to enforce judicial estoppel to eliminate the verdict and related awards. *Black's Law Dictionary* 1164 (6th ed. 1951) (defining a "motion" as "[a]n application for a rule or order made to a court or judge"); *See*, (Appellant Brief, p. 21) ("Dr. McGruder should be barred from pursuing this lawsuit … this matter should be remanded to the district court with instructions to vacate all previous orders and dismiss this case with prejudice"). Metro's motion was made to protect its own financial interest and avoid accountability, not to protect the integrity of the courts. Metro would clearly reap the biggest reward from its requested relief.

It is incomprehensible for Metro to argue *sua sponte* authority for this Court to consider an argument raised by the motion of Metro Nashville. The rules do not, and should not, permit parties to circumvent lack diligence and procedural failures by filing an otherwise procedurally deficient motion with hopes that the judiciary will: (1) put up blinders to its failure to proffer a procedurally proper motion; and (2) evaluate the merits of its argument under *sua sponte* authority, as if the issue was not prompted by the party's motion. A contrary understanding of *sua sponte* renders the definition and procedural rules meaningless, while creating unpredictability for litigants, lawyers, and the judiciary. Appellant extracts its authority from a footnote in *DeMarco v. Ohio Decorative Products, Inc*., 19 F.3d 1432 (6th Cir. 1994). The footnote citation

was stated in dicta, and it is not binding authority as an unpublished opinion. *Id*. Moreover, the footnote: (1) does not evaluate the definition of *sua sponte* or explain how a ruling can be *sua sponte* when prompted by a litigant's motion rather than on the court's own accord; and (2) does not rely on any authority for granting an exemption to judicial estoppel motions from the procedural rules subjecting such arguments to waiver when not first raised to the district court.

In the end, the judicial estoppel issue should not be considered in this appeal. The rules of civil and appellate procedure are in place to protect the integrity of the judicial system – which is not furthered by evaluating procedurally deficient motions under the guise of *sua sponte* authority. That is especially the case here, where doing so could result in rewarding a party proven to have violated Title VII with a windfall from all awarded and entitled accountabilities.

## II.    <u>The Reinstatement Award Cannot Be Reversed as an Abuse of Discretion</u>

The only issue that should be considered is whether the award of reinstatement was an abuse of discretion by the district court. (Notice of Appeal, RE 117, PageID# 2406-07). For the following reasons, the reinstatement order should not be reversed.

A. <u>The Sixth Circuit is highly deferential to district court reinstatement orders.</u>

"The availability of reinstatement is entirely entrusted into the sound

discretion of the district court, and a decision granting such relief is reviewed by the appellate court only for an abuse of discretion." *Fuhr v. Sch. Dist. of Hazel Park*, 364 F.3d 753, 760-61 (6th Cir. 2004) (citing *Shore*, 42 F.3d at 377-78). Discretion is abused by "applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact." *Jones v. Ill. Centr. R. Co.*, 617 F.3d 843, 850 (6th Cir. 2010).

The abuse of discretion standard "is highly deferential to the district court's decision." *Certified Restoration Dry Cleaning v. Tenke*, 511 F.3d 535, 541 (6th Cir. 2007). The standard implies a clear-error review and does not allow reversal unless the appellate court is left "with a definite and firm conviction that a mistake has been committed." *Kensu v. Corizon*, Inc., 5 F.4th 646, n. 2 (6th Cir. 2021); *Lisa M. v. Leander Indep. Sch. Dist.*, 924 F.3d 205 (5th Cir 2019). The Sixth Circuit will affirm a district court's determination on reinstatement unless a clear error is found. *Fuhr,* 364 F.3d at 760-61 (affirming reinstatement award); *Tramill v. United Parcel Service*, 10 Fed. App'x 250, 256 (6th Cir. 2001) (same); *Suggs v. ServiceMaster Educ. Food Mgm't*, 72 F.3d 1228, 1236 (6th Cir. 1996) (same); *Carberry v. Monarch Marking Sys's, Inc.,* 30 Fed. Appx 389, **5 (6th Cir. 2002) (same).

B.  <u>The district court's award of reinstatement was not an abuse of discretion.</u>

At trial, the trial judge unequivocally reserved ruling on reinstatement

until after the verdict. (Trial Transcript, RE 83, PageID# 551) ("But if the jury comes back and finds retaliation, I will give you the opportunity to file a motion that seeks whatever you want on the remedy of reinstatement…"). Post-verdict, McGruder filed a motion requesting reinstatement in December 2021, and Appellant responded in opposition in January 2022. (Reinstatement Motion, RE 82, PageID# 538-542) (Response, RE 90, PageID# 1380-1383). On August 18, 2022, reinstatement was awarded by the district court. (Order, RE 116, PageID# 2405). The trial judge issued an order that was sound and squarely within its discretion. (Id.).

1. The district court correctly started by noting the make whole goals of Title VII and McGruder's presumptive entitlement to reinstatement.

The district court started its evaluation by recognizing "[t]he goal of Title VII is to make persons whole for injuries suffered on account of unlawful employment discrimination." (Id. at PageID# 2404) (*citing Suggs v. ServiceMaster Educ. Food Mgmt.*, 72 F.3d 1228, 1233 (6th Cir. 1996); *Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975). The district court then proceeded to recognize that: "Plaintiffs who prove discrimination in violation of Title VII are entitled to reinstatement, unless exceptional circumstances make the chances for a satisfactory employment relationship unlikely." (Id.) (*citing Shore v. Fed Express Corp.*, 777 F.2d 1155, 1159 (6th Cir. 1985) (quotation omitted); *See also, Fuhr* 364 F.3d at 761.

These foundational tenets are the correct law and was not an error to recognize. McGruder's presumptive entitlement to reinstatement for proving Title VII violations was the proper starting point.[3]

2. <u>The district court determined "there are no exceptional circumstances in the present matter that make the chances for a satisfactory employment relationship unlikely."</u>

The district court determined that "there are no exceptional circumstances in the present matter that make the chances for a satisfactory employment relationship unlikely." (Id. at PageID# 2405). Ultimately, the district court was not persuaded to interrupt McGruder's entitlement to reinstatement because Appellant failed to support its conclusory claims of "displacement of another employee" and "hostility between the parties" with evidence or compelling arguments. (Id.).

A. <u>Displacement of another employee and Metro's capacity to reinstate</u>

In her motion, McGruder argued that reinstatement "is appropriate because (1) the same or similar position is available at MNPS; (2) McGruder is qualified for and available for said position [or any comparable central office position in the school system]; and (3) MNPS, a large government employer, did not present any evidence suggesting that reinstatement was not feasible at trial." (Reinstatement

---

[3] McGruder had no burden to prove that a satisfactory employment relationship was likely. Absent evidence that a satisfactory prospective employment relationship was unlikely, there is an entitlement to reinstatement after proving Title VII violations.

Motion, RE 82, PageID# 538-542). She emphasized that "MNPS failed to present a shred of evidence sufficient to negate the presumptively favored remedy of reinstatement from applying to this case." (Id.). Metro's argument on this issue consisted of two short paragraphs claiming: (1) "Plaintiff's position … is currently filled by someone else"; and (2) "The job title may have changed, but there is someone (unassociated with this matter) who is currently employed by MNPS doing the same job that Plaintiff was doing in 2015-16." (Response, RE 90, PageID# 1380- 1383).  For good reasons, Metro Nashville's displacement claims were deemed insufficient to repudiate McGruder's entitlement to reinstatement.

1. Metro put on no proof of displacement at trial or in post-trial pleadings.

The district court correctly held: "Metro put on no proof as to its capacity or lack thereof for reinstatement in a comparable position within its central office." (Order, RE 116, PageID# 2405). Metro does not, and cannot, claim that it presented evidence establishing: (1) its capacity or lack thereof to reinstate McGruder; or (2) displacement of another employee. Any contention that the district court "disregarded uncontroverted proof" of displacement or the school system's capacity to reinstate McGruder is demonstrably false.

At trial, the only information tangentially related to the subject was solicited *sua sponte* by the district court judge. (Tr. Trans. Vol. IV, RE 96, PageID# 2077-78). Counsel for Appellant did not solicit testimony or offer a shred of

proof during trial on the subject. On its own accord, the trial judge asked a short sequence of questions to former MNPS employee Katie Cour. (Id.). Cour had not worked for MNPS for over five years at the time. (Id.). She testified as a lay witness, not as a corporate representative whose answers were binding on Metro as an entity. Cour responded by stating her belief that: (1) there "currently is still a position within MNPS" that is "the same position" as the job formerly held by McGruder; and (2) the position "is filled by someone else." (Id.).

But to the issues of displacement or the school system's capacity to reinstate McGruder, Cour's responses raised more questions than she provided answers. Specifically, Cour provided no information about: (1) the identity of the position occupant; (2) whether the occupant would be displaced if reinstatement was awarded; (3) whether this large government employer, of 11 thousand employees, had the capacity to reinstate McGruder to the same or a comparable job without displacing the occupant; (4) whether the occupant was in the job in an interim or permanent capacity; or (5) whether the job was available for permanent appointment for McGruder. (Id.). No evidence or testimony was presented by Metro Nashville to address any of the above-enumerated issues. Despite being tipped off to the importance of these issues, Metro Nashville did not to expand on the judge's inquiries. Accordingly, the district court correctly held:

> "While Katie Cour testified at trial in December 2021 that another person was in Dr. McGruder's formerly held position, the Court cannot assume such a person continues to hold that position. Furthermore, Metro put on no proof as to its capacity or lack thereof for reinstatement in a comparable position within the central office.

(Order, RE 116, PageID# 2405).

The gravamen of Appellant's appellate grievance is its perception that the trial judge: (1) "reversed course" from non-binding comments made at trial; and (2) did not assume facts not in evidence in its favor. The district court could not have been clearer that it was reserving ruling on reinstatement until after the verdict. (Transcript, RE 83, PageID# 551). Moreover, the trial judge's comments at trial are not evidence. Nor were the trial judge's comments stated as final orders or findings. Metro Nashville's post-trial pleadings, arguments, and evidence [or lack thereof] were simply insufficient to persuade the judge to deny reinstatement. Metro Nashville fails to cite a single case where an appellate court found it an abuse of discretion to reserve ruling on an issue; review evidence, arguments, and the full record; then issue an order that differs from his/her initial impressions. That is because no such case exists in American jurisprudence. And to the extent that the judge changed his mind after evaluating the evidence and arguments, that is not an abuse of discretion – it is the definition of discretion.

2. <u>The district court's refusal to assume displacement would result was wise because it is proven that displacement would not have been demanded here.</u>

Metro Nashville's claim that the district court "disregarded uncontroverted proof" of displacement is a false red herring assertion. What the "uncontroverted proof" truly reflects is that the claim of displacement or incapacity is false.

It is proven that McGruder's former job was available for reinstatement without displacing another employee. The record includes an August 31, 2022 sworn Declaration from Chief of Staff Henry Clay stating:

> "The responsibilities of the former Executive Officer of Priority Schools have been subsumed into the larger role of Chief of Innovation; a position occupied by Renita Perry. **Ms. Perry was appointed in the spring of 2022 following a time as interim after the retirement of Sharon Griffin in the fall of 2021.**"

(Clay Declaration, RE 118-1, PageID # 2410, ¶ 6).

The trial concluded in the winter of 2021 [in December]. Meaning, at the time of trial and post-trial pleadings, the job formerly held by McGruder was available for permanent appointment and reinstatement because: (1) Perry occupied the job in an interim capacity after the retirement of Griffin in the 2021 fall; and (2) Perry was not appointed to McGruder's former job until the spring of 2022. (Id.). It is perplexing that Metro Nashville would allege that the district court erred by disregarding "uncontroverted proof" of displacement or an

inability to reinstate when there is "uncontroverted proof" that the position was available at the time – from MNPS' own agent's factual admission. (Id.).

   3. Even if the reinstatement award required displacement, which it does not, the reinstatement award would still need to be affirmed.

      a. Displacement is not an automatic bar to awarding reinstatement.

Metro Nashville wrongly suggests that reinstatement cannot be ordered if displacement is required. Although "in some circumstances" an employer is "not required to 'bump' an innocent third party in order to instate the plaintiff into the third party's position," the Sixth Circuit recognizes that district courts have the authority and discretion to award reinstatement that requires displacement. *Fuhr*, 364 F.3d at 761. *Fuhr* is instructive on this point. *Id*. In *Fuhr*, the Sixth Circuit affirmed an award of reinstatement that required displacement. The Sixth Circuit recognized that the cases where courts have denied reinstatement due to displacement "demonstrate only that the district court would not have abused its discretion had it denied," but held that those cases "do not support the contention that the district court abused its discretion by granting" reinstatement. *Id*. *Fuhr* illuminates the Sixth Circuit's deference to fact determinations and the balancing of equities made by district courts in awarding reinstatement. *Id.*

b. <u>Appellant's displacement argument is invalidated by acts of bad faith.</u>

A series of bad faith acts and material misrepresentations undermine the veracity of Metro Nashville's appeal based on the displacement contention.

To start, Metro Nashville misrepresented that "reinstatement would not be appropriate here because someone would still need to be displaced in order to reinstate Plaintiff" in its response to the reinstatement motion in January 2022. (Response, RE 90, PageID# 1380-1383). At the time of its assertion, Metro was obviously aware that Perry occupied McGruder's former job in interim capacity; thus, the job was available for permanent appointment and reinstatement. The information about Perry's interim status and actual availability of the position was conspicuously withheld – as it would have increased the likelihood of a reinstatement award. Withholding this information is indicative of bad faith and breached its duty of candor to the court. At a minimum, Metro's representation to the district court was misleading.

Similarly, in its reply to the stay motion, Metro Nashville represented to the district court that McGruder's former job is "now defunct" and claimed that the job occupied by Perry is not "the same as [McGruder's] former role." (Reply, RE 127, Page ID# 2524-2525). This false assertion is directly contradicted by Metro Nashville's earlier admission that: "The job title may have changed, but there is someone … who is currently employed by MNPS

doing *the same job* that Plaintiff was doing in 2015-16." (Response, RE 90, PageID# 1381). Appellant's assertion also contradicts the comments made in Henry Clay's Declaration and Katie Cour's trial affirmation that "there's someone doing effectively *the same job* that Dr. McGruder was doing in 2015-16." (Clay Declaration, RE 118-1, PageID # 2410, ¶ 6) (Tr. Trans. Vol. IV, RE 96, PageID# 2077-78). For its appeal, Metro Nashville appears to have abandoned its claim that McGruder's former job is "defunct" or different from the one formerly held by McGruder. Nevertheless, Appellant's false statements and shifting justifications are indicative of bad faith and suggest its strong desire to deny McGruder reinstatement by any means necessary.

Lastly, Metro Nashville's appointment of Perry "in the spring of 2022" suggests bad faith and is legally problematic for Metro. By the 2022 spring, the school system was aware that McGruder had: (1) prevailed in her lawsuit in December 2021; (2) moved for reinstatement shortly thereafter; and (3) had a substantial claim to the job that was pending judicial review. Nevertheless, Metro Nashville proceeded to remove the interim tag from Perry and appointed her to McGruder's former job. The school system could have, and should have, kept Perry employed in an interim capacity pending judicial resolution of the reinstatement issue. But it chose not to do so. Such bad faith behavior should not be encouraged. But legally, McGruder cannot be denied

reinstatement due to displacement concerns now. Federal courts recognize:

> "In balancing the equities, one often cited justification for ordering or upholding bumping of an innocent employee is that the employer was on notice of past discrimination against a plaintiff or that a plaintiff had a substantial claim to a vacant position, but nevertheless filled the position, or that the employer exhibited other bad faith behavior."

*Kraemer v. Franklin and Marshall College*, 941 F.Supp. 479, 483 (E.D. Pa. 1996) (*citing Reeves v. Claiborne Co. Bd. of Educ.*, 828 F.2d 1096, 1101-02 (5th Cir. 1987) (reversing denial of reinstatement despite displacement because defendant hired a successor two months before trial aware that plaintiff had a substantial claim to the position pending). As recognized in *Reeves*, "if the existence of a replacement constituted a complete defense against reinstatement, then reinstatement could effectively be blocked in every case merely by hiring an innocent third party after the retaliatory purpose was achieved." *Id*.

In the end, Metro's displacement claims have been false and exaggerated from the start. The award of reinstatement was not an abuse of discretion.

B.  <u>Hostility Between the Parties</u>

The determination about whether "hostility between the parties precludes the possibility of a satisfactory employment relationship" is also reviewed for an abuse of discretion. *Shore*, 777 F.2d at 1159. Appellate courts strongly defer to a trial judge's discretion due to his/her opportunity to observe witnesses,

evaluate evidence, and superior opportunity to get "the feel of the case." *Noonan v. Cunard Steamship Co*., 375 F.2d 69, 71 (2nd Cir. 1967); *U.S. v. Little*, 61 F.3d 450, 453 (6th Cir. 1995).

1. The district court correctly recognized that the actors responsible for the retaliatory termination are no longer employed by MNPS.

Federal courts recognize that, without evidence affirming the contrary, the likelihood of a prospective inability to maintain a satisfactory employment is eliminated or deemed unlikely when the employees responsible for the discrimination or complaining are no longer employed by the entity. *Rodgers v. Western-Southern Life Ins. Co*., 12 F.3d 668, 678 (7th Cir. 1993) (affirming reinstatement award where supervisor, whose racial comments were the impetus for the Title VII action, no longer work for the employer); *Morgan v. The Arkansas Gazette,* 897 F.2d 945, 953 (8th Cir. 1990) (affirming reinstatement because any animosity was eradicated because the employees responsible for the discrimination no longer work for the employer); *See also*, *Jackson v. City of Albuquerque*, 890 F.2d 225, 232 (10th Cir. 1989) (reversing denial of reinstatement where "most of those making complaints against [plaintiff] are no longer employed").

Here, the district court correctly recognized that "any possible animosity as a product of this litigation does not exist because the actors responsible for her retaliatory termination, Katie Cour and Vanessa Garcia, are no longer

employed by Metro." (Order, RE 116, PageID# 2405). Additionally, Dorothy Gunn, whom Appellant relies on for much of its contentions, is retired from the school system. No current school system employee testified about harboring any hostility towards McGruder at trial. This case did not include any evidence of present animosity between McGruder and any current employee of MNPS. And McGruder affirmed that she "has no issues with any present central office employee at MNPS." (Reinstatement Motion, RE 82, PageID# 538- 542). The district court's recognition of these uncontroverted facts was correct and cannot be considered an abuse of discretion. The school system admitted as much in post-verdict public statements declaring:

> "The case in question involves a unique set of circumstances in the 2015-16 school year, several years prior to Dr. Battle's leadership as Director of Schools [the current Superintendent], and with employees who are no longer working for the district…"

(Response to Stay Motion, RE 121, PageID# 2428).

2. <u>The district court correctly held that assumed litigation hostility is not a sufficient reason to deny reinstatement.</u>

Hostility generated from the heat of litigation is an insufficient reason to deny reinstatement, because "to deny reinstatement to a victim of discrimination merely because of the hostility engendered by the prosecution of a discrimination suit would frustrate the make-whole purposes of Title VII." *Dickerson v. Deluxe Check Printers*, Inc. 703 F.2d 276, 281 (8th Cir. 1983);

*Taylor v. Teletype Corp*., 648 F.2d 1129, 1139 (8th Cir. 1981). Federal courts recognize that "antagonism between parties occurs as a natural by-product of any litigation." *Id*.

Here, Metro Nashville presented no evidence that it harbored present hostility towards McGruder as a product of the litigation. McGruder informed the court that she harbors no "hostility towards MNPS as a result of this litigation." (Reinstatement Motion, RE 82, PageID# 538-542). And although the trial judge made a general comment that "the downside of reinstatement is that you are forcing people who have been in litigation against one another for years to work together again," his final ruling comprehensively evaluated the circumstances of this case and held that "any animosity as a product of this litigation does not exist" due to the departure of the "actors responsible for her retaliatory termination." (Order, RE 116, PageID# 2405).[4] This reasoning is supported by the above-cited federal jurisprudence.

Therefore, the district court's determination that possible hostilities as a

---

[4] Metro Nashville's effort to suggest existing hostility based on Fall of 2022 pleadings and litigation correspondence fail to recognize that such comments are made as part of an adversarial process. Further, such pleadings include no assertions of personal animosity towards any current MNPS agent whom McGruder would have to work with at MNPS. Moreover, the reinstatement award is not reviewed *de novo*. The Fall 2022 pleadings/correspondence are irrelevant to determining whether the reinstatement award was an abuse of discretion. This Court must disregard such contentions by Metro Nashville in this appeal.

product of litigation should not bar reinstatement was a proper exercise of discretion. Federal courts recognize that "a court might deny reinstatement in virtually every case" if hostility as a product of litigation could serve as bar to reinstatement – which would render the remedy meaningless and frustrate the make whole goals of Title VII. *Taylor*, 648 F.2d at 1139.

   3. <u>The district court correctly rejected the vague claims of "unprofessional conduct" as grounds to deny reinstatement.</u>

   The district court correctly determined that "Metro's argument against reinstatement based on proof at trial of Dr. McGruder's 'unprofessional conduct' is not well taken." (Order, RE 116, PageID# 2405). The trial judge observed and was aware that Metro did not produce any concrete or persuasive evidence of "unprofessional conduct" at trial. McGruder disputes and denies any such claims as pretext, and Appellant relies entirely on amorphous hearsay-laden accusations that were not backed up with proof at trial. Conversely, McGruder presented uncontroverted proof at trial that she received positive performance praise and was never issued a single disciplinary action for unprofessional behavior – while also offering proof that MNPS maintains a policy demanding the documentation of derogatory concerns.

   Importantly, the "unprofessional conduct" claims were asserted as Metro's legitimate non-discriminatory reason for the termination. It is clear the

jury rejected the veracity of its claims with its verdict. Because the unsupported allegations of "unprofessional conduct" were rejected by the jury as the termination reason, the same allegations cannot be sufficient to deny an entitled right to reinstatement. The jury and district court heard the claims of unprofessional conduct, and both rejected them. If employers were able to avoid reinstatement merely by making unsubstantiated claims of unprofessional behavior, it is difficult to imagine that the remedy would ever be awarded.

The district court's the determination that "no hostility … makes reinstatement infeasible" was a proper exercise of discretion and cannot be reversed.

## III.    Reinstatement Should Be Affirmed and Instructed Immediately

The district court granted a stay of reinstatement pending appeal. (Order, RE 132, PageID# 2564-67). The grant of a stay pending appeal was improper. The gravamen of this contention is that the district court improperly considered the existence of Metro's judicial estoppel argument in granting the stay, but it should not have done so.

Federal courts hold that a "court will not consider arguments that are raised for the first time in a reply brief." *Scottsdale*, 513 F.3d at 553. Courts deem "issues to be waived when they are raised for the first time … in replies to responses." *Id*. The judicial estoppel argument was not raised in Metro's

August 25, 2022 motion to stay. Thus, Metro's insertion of the argument into its reply brief [and Rule 54 motion] should not have been considered for determining whether to grant a stay pending appeal. In a separate order, the district court correctly did not to consider the judicial estoppel claim. But when evaluating the issue of stay of reinstatement pending appeal, it did. But-for consideration of the judicial estoppel argument's existence, the appropriate factors for evaluating the stay motion strongly supported denial of the stay motion. (Response to Stay, RE 121, PageID# 2521- 2436).

Appellee acknowledges that, at this point, much of the harm caused by the grant of stay is done. To avoid further harm, Plaintiff-Appellee requests this Court to: (1) affirm the reinstatement award; and (2) issue instruction for the district court to immediately enforce reinstatement without further delay.

## IV.   In The Alternative, Judicial Estoppel Should Not Apply In This Case.

In the alternative, Plaintiff-Appellee contends that judicial estoppel is inappropriate under established principles of law and equity.

### A.   <u>The finding of liability in the verdict should remain in effect and enforced.</u>

A jury verdict is a sacrosanct component of the integrity of the judicial system. *U.S. v. Felton*, 239 F.Supp.2d 122, 124 (D. Mass. 2003) ("We hold a jury's verdict to be sacrosanct"). The public and judiciary have a "fundamental, overriding interest in eradicating racial discrimination in education" and enforcing civil rights federal

laws. *Bob Jones University v. U.S.*, 461 U.S. 604 (1983). A jury verdict speaks as the conscious of the community and acts as a deterrent to future violations. Here, a jury found that Metro Nashville illegally fired McGruder for opposing discrimination against teachers and students in violation of Title VII. (Verdict, RE 78, PageID# 523). Metro Nashville does not appeal or challenge the jury verdict on the merits. Instead, Metro asks that the verdict be retroactively erased based on an argument completely unrelated to the merits of the case.

Especially at this procedural point, the on-paper verdict should not be retroactively vacated under an equitable doctrine. Affirming the verdict honors the jury's determination that Metro Nashville acted illegally, protects the integrity of the judicial process, protects the public and judicial interest in eradicating discrimination, and sends a strong message to MNPS and other employers that such behavior is not condoned. Erasing the jury verdict undermines these important interests and encourages future unlawful acts by employers.

B. The reinstatement award is not subject to judicial estoppel.

The district court awarded "Dr. McGruder the remedy of reinstatement to her prior position or a comparable central office position with Metro within thirty (30) days from the date of entry of this Order." (Order, RE 116, PageID# 2405).

Judicial estoppel does not, and should not, apply to the reinstatement

award under principles of law and equity.

1. <u>Law – Reinstatement is a non-monetary award not subject to judicial estoppel</u>

"The trustee and creditors are interested in the debtor's property that can add anything of [monetary] value to the estate." *Burnes v. Pemco Aeroplex, Inc*., 291 F.3d 1282, 1289 (5th Cir. 2002). Federal courts recognize that injunctive remedies like reinstatement are non-monetary, offer nothing of value to the bankruptcy, and are "of no consequence to the trustee or the creditors." *Id*.

Appellate and district courts across the country, including federal courts applying Sixth Circuit law, hold that judicial estoppel should not apply to undisclosed claims for reinstatement and injunctive remedies. *Burnes*, 291 F.3d at 1289 (5th Cir. 2002) ("We conclude that [plaintiff's] undisclosed claim for injunctive relief offered nothing of value to the estate and was of no consequence to the trustee or the creditors" … He may pursue his claims for injunctive relief"); *Barger v. City of Cartersville*, 348 F.3d 1289, 1297 (11th Cir. 2003) (holding plaintiff's claim for reinstatement "would have added nothing of value to the bankruptcy estate even if she properly disclosed it. Therefore … judicial estoppel does not prohibit [plaintiff] from pursuing" reinstatement"); *Matthews v. Potter*, 316 Fed. Appx 518, 524 (7th Cir. 2009) (holding judicial estoppel does not bar plaintiff's reinstatement remedy "which was of no value to her bankruptcy estate and was of no consequence to the trustee or creditors");

*Barachkov v. Lucido*, 151 F. Supp.3d 745 (E.D. Mich. 2015) (applying judicial estoppel to monetary remedies; but holding "judicial estoppel does not apply" to the remedy of reinstatement) (*aff'd by the 6th Cir.*); *Lett v. Reliable Ruskin*, 2006 WL 2056582, at *7-8 (M.D. Alabama 2006) (holding "judicial estoppel only applies to claims for monetary relief").

Accordingly, McGruder's awarded non-monetary injunctive remedy of reinstatement is not subject to judicial estoppel.[5]

2.  Equity

Reinstatement furthers the make-whole goals of Title VII by requiring "[t]he injured party be placed, as near as may be, in the situation [s]he would have occupied if the wrong had not been committed." *Fuhr*, 364 F.3d at 761. Metro Nashville fired McGruder for opposing against racial discrimination teachers and students. (Verdict, RE 78, PageID# 523). The unlawful termination derailed her rising career trajectory, and McGruder has been unable to regain the same career status or salary in the years since. The economic harms flowing from the

---

[5] In a prior pleading, Appellant wrongly claimed that the reinstatement remedy should be construed as part of the monetary estate by suggesting the district court's order demands promotion and increased earnings. (Reply, RE 129, PageID# 2559). The order speaks for itself. Appellant's assertion is false. Plaintiff did not request a raise or promotion. (Reinstatement Motion, RE 82, PageID# 538-542). The district court explicitly ordered McGruder "to her prior position or a comparable central office position," and the district court did not order a promotion or pay increase. (Order, RE 116, PageID# 2405). Neither can be assumed or accepted as a fact for purposes of this appeal.

termination were substantial and drove McGruder into bankruptcy. (Declaration, RE 128-1, PageID# 2550-51). Accordingly, the equities support affirming the reinstatement award and restoring McGruder to a career status and salary that should have never been taken from her in the first place. *Barachkov*, 151 F.Supp.3d 745 ("to fail to implement the remedy of reinstatement to Plaintiffs – their only remedy – would reward the violation of their constitutional rights").

C.  The attorney's fees award is not subject to judicial estoppel.

The trial judge ordered a substantial award for attorney's fees for successful representation in proving Metro's Title VII violations. (Order, RE 113, PageID# 2396 - 2400). Under principles of law an equity, judicial estoppel does not and should not apply to the attorney's fees award.

1.  Law

 "Section 1988 attorney's fees are not a component of monetary damages," offer no "monetary value to the estate," and have "no impact on the bankruptcy estate or creditors." *Killebrew v. CSX Transp., Inc*., 2005 WL 1705636, *4 (M.D. Alabama 2005) (*citing Burnes*, 291 F.3d at 1289; *Barger*, 348 F.3d at 1297); *Lett,* 2006 WL 205682 at *8-9 ("judicial estoppel only applies to claims for monetary relief," not attorney's fees awards) (citing *Fernandes v. Limmer*, 663 F.2d 619, 637 (5th Cir. 1981) (holding §1988

attorney's fees are not a component of monetary damages).

Federal courts recognize that, regardless of whether judicial estoppel applies to a litigant, a separate award of attorney's fees for proving civil rights violations is appropriate under § 1988. *Killebrew,* 2005 WL 1705636 at *4 (holding "that the fact that [plaintiff] is precluded from recovering monetary damages is not determinative of whether the prevailing party may recover an award of attorney's fees under § 1988"); *Lett* 2006 WL 205682 *8-9 (finding that judicial estoppel does not bar Plaintiff debtor from seeking costs and attorney's fees).

The rationale for not subjecting § 1988 attorney's fees to judicial estoppel is easy to understand: § 1988 attorney's fees do not "reduce the funds in the bankruptcy estate, as the fees would not be paid from the bankruptcy estate, but rather" from the party who violated the law to legal counsel directly. *Killebrew,* 2005 WL 1705636 at *4; *Lett*, 2006 WL 205682 at *8-9 ("the purpose of attorney's fees is to reasonably compensate the prevailing party's attorney for work performed … any fees awarded would go to [plaintiff's] attorneys, and not [plaintiff]").

Accordingly, the attorney's fees award is beyond the interest of the bankruptcy and is not subject to judicial estoppel.

2. Equity

The statutory goals of 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k) supports affirming the attorney's fees award. *Geier v. Richardson,* 871 F.2d 1310, 1313 (6th Cir. 1989). The "overriding goal [of attorney's fees awards] is to reimburse with reasonable attorney's fees those who as private attorneys general take it upon themselves to invoke and thereby invigorate the federal constitutional and statutory rights." *Id.* (holding "civil rights laws depend heavily upon private enforcement, and fee awards have proven an essential remedy if private citizens are to have meaningful opportunity to vindicate important congressional policies which these laws contain.") (*citing Charles v. Daley*, 846 F.2d 1057, 1063 (7th Cir. 1988) (quoting the House and Senate Reports on public policy for attorney's fees).

Without question, awarded counsel prepared and presented a meritorious case that proved Metro's violation of Title VII. Counsel's representation was about much more than securing monetary remedy for McGruder; it promoted a strong public interest in eradicating discrimination and enforcing federal civil rights laws. There is no equitable justification to deprive counsel of hard-earned compensation after years of litigation, especially at the belated procedural point. A contrary ruling would strongly deter members of the bar from representing individuals in civil rights cases, undermine the integrity of the

judicial process and verdict, and demoralize the public interest in eradicating discrimination and holding violators accountable.

On principles of law and equity, the appellate court should affirm the award of attorney's fees and should not apply judicial estoppel to the same.

D. <u>Judicial Estoppel should not apply or be narrowly tailored in this case.</u>

Judicial estoppel is "an equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*, 121 S. Ct. 1808, 750 (2001). *Browning v. Levy*, 283 F.3d 761, 766 (6th Cir. 2002). The application of judicial estoppel is "not reducible to any general formulation of principle." *Id*.

Federal courts hold that judicial estoppel is "an extraordinary remedy to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice" and "no lesser sanction would adequately remedy the damage done by the litigant's misconduct." *Eckstein v. Cincinnati Ins.,* 469 F.Supp.455, 463 (*citing Ryan*, 81 F.3d at 365; *Krystal Cadillac v. Gen. Motors Corp*., 337 F.3d 314, 319 (3rd Cir. 2003). Courts "may not employ judicial estoppel unless it is tailored to address the harm identified." *Id*. The application of judicial estoppel does not demand dismissal, vacating the verdict, or eliminating all awarded remedies – as requested by Metro. *Id*.; *Whorley v. Kuchera Industries, Inc*., 2006 WL 8458443, *3 (W.D. PA 2006) ("Judicial estoppel is an equitable doctrine, the application of which is always

discretionary with the Court, and the doctrine does not require dismissal of a claim every time an inconsistent position is taken by a party") (*citing Ryan*, 81 F.3d at 365).

For multiple reasons, judicial estoppel should not apply here. Alternatively, judicial estoppel should be narrowly applied to avoid rewarding Metro with the elimination of all awarded remedies under the facts of this case.

1. Belated Timing of the Judicial estoppel assertion

The procedural timing of a judicial estoppel argument is "relevant in determining the equities of applying the doctrine or in narrowly tailoring its application to the harm at issue." *McKenna*, 2009 WL 10687689, *3 at f.n. 1.

Metro Nashville did not make a judicial estoppel argument at any point between the December 2017 filing and December 2021 verdict. Metro also failed to make a judicial estoppel argument in the 9 months between the verdict and filing its Notice of Appeal on August 25, 2022. The grossly belated timing of Metro's judicial estoppel argument is extremely rare, but not entirely unprecedented in federal jurisprudence. At a similar procedural point, in *McKenna*, the federal court declined to apply judicial estoppel and held "[t]o sanction [plaintiff] by dismissing his claims in this suit, which have already been found meritorious by a jury, would be neither appropriate nor narrowly tailored to the harm at issue." *Id*. (holding the "[plaintiff's] failure to list this action as an

asset in his bankruptcy proceeding, even if assumed to be done in bad faith, cannot justify applying the doctrine of judicial estoppel to overturn a jury verdict in [plaintiff's] favor"). This case should compel similar reasoning and application of equities.

2. Metro Nashville Moves its Motion with Unclean Hands

Judicial estoppel is an equitable doctrine. When considering the appropriateness of an equitable doctrine, the doctrine of unclean hands demands that "[h]e who comes into Equity must come with clean hands and enables the court to prevent a party from profiting from its own misconduct." *Osborn v. Griffin*, 865 F.3d 417, 451 (6th Cir. 2017).

Federal courts recognize that judicial estoppel cannot be weaponized as "a technical defense for litigants seeking to derail potentially meritorious claims." *Ryan*, 81 F.3d at 365. The evidence and timeline paint a disturbing picture indicating that Metro weaponized belated research of bankruptcy filings and the judicial estoppel doctrine as tactical maneuvers to derail meritorious claims and dodge all awarded remedies – especially the award of reinstatement.

Specifically, on August 18, 2022, the reinstatement order was issued. (Order, RE 116, PageID# 2405). Prior to this point, MNPS was receptive to resolving all issues with McGruder and settling the case. (Correspondence, RE 128-2, PageID# 255). Before the reinstatement award, MNPS did not research

bankruptcy filings or make a judicial estoppel argument. Everything changed after the reinstatement award.

On August 22, 2022, McGruder delivered MNPS correspondence expressing her right and entitlement to return to the school system per the reinstatement order. (Letter, RE 128-3, PageID# 2555-57). This letter was protected activity expressing an entitled right. (Id.) Appellant responded to this protected act and the reinstatement order on August 25, 2022 by: (1) taking a position that settlement or resolution was no longer feasible; and filing (2) a notice of appeal of the reinstatement award; and (3) a motion to stay the reinstatement pending appeal. (Notice of Appeal, RE 117, PageID# 2406-07) (Motion to Stay Reinstatement, RE 118, PageID# 2408).

On August 29, 2022, the strong opposition to the motion to stay reinstatement pending appeal put the likelihood of a stay in peril on the merits of the motion. (Response to Stay Motion, RE 121, PageID# 2421-2436). Metro needed to find another way to avoid reinstating McGruder. So, in response, Metro researched bankruptcy filings of McGruder for the first time and filed two pleadings raising an assertion of judicial estoppel on August 31, 2022. (Motion to Revise/Alter, RE 125, PageID# 2509) (Reply to Stay, RE 127, PageID # 2527)

McGruder contends that but-for the reinstatement order and her protected

acts, Appellant would not have: (1) ceased post-verdict resolution and settlement discussions; (2) researched bankruptcy filings; (3) asserted a judicial estoppel argument; or (4) performed any other related legal maneuvers to delay or deny remedy to McGruder – including filing this appeal.

McGruder contends that Metro's legal maneuvers were motivated by retaliatory animus and unclean hands. The causal connection is supported by temporal proximity and comments suggesting improper motives to deny reinstatement. Specifically, in response to McGruder's protected letter and reinstatement order, Metro conveyed: **"We're not going to be able to work out a settlement. Whatever chances there were earlier just got blown up by the court's order of reinstatement last week. We're going to seek an immediate appeal of that decision."** (Correspondence, RE 128-2, PageID# 2552) If McGruder is right about its improper motives, MNPS cannot receive reward under the equitable doctrine of judicial estoppel. *U.S. v. McCaskey*, 9 F.3d 368, 379 (5th Cir. 1993) (holding judicial estoppel is designed to "prevent unfair and manipulative use of the court system by litigants," not reward such behavior). Of course, it is anticipated that MNPS will deny her allegations – which is its right. But for purposes of this case, the prospect of retaliatory motives and unclean hands is sufficient to compel the appellate court to exercise caution in any application of judicial estoppel. *In re B&P Baird Holdings, Inc.,*

759 F. Appx 468, 478 (6th Cir. 2019) (holding judicial estoppel "should be applied with caution to avoid impinging on the truth- seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement").

3. Inadvertence or Mistake

"Judicial estoppel does not apply when the prior position was taken because of a good faith mistake rather than as part of a scheme to mislead the court," rather is reserved for incidents where "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Burnes*, 291 F.3d at 1287 (*citing Matter of Cassidy*, 892 F.2d at 642 (explaining that judicial estoppel should not be invoked "where the former position was the product of inadvertence or mistake"); *See also*, *Eubanks*, 385 F.3d at 898. Here, mistakes in the bankruptcy papers were admittedly made. But McGruder did not personally prepare to submissions and is not a legal professional. Nothing suggests bad faith or deliberate behavior. (Declaration, RE 128-1, PageID# 2550-51).

If judicial estoppel's application is considered, McGruder strongly contends that it is appropriate to weigh her single inadvertent mistake with the multiple intentional mistakes of Metro Nashville. Specifically, McGruder asks that her inadvertent mistakes be balanced with: (1) the mistakes of MNPS in

violating Title VII; (2) the mistakes of MNPS in failing to properly or timely raise the issue to the district court; (3) the mistakes of MNPS for failing to identify judicial estoppel on its Notice of Appeal; (4) the mistakes of MNPS by moving its motion with retaliatory animus and unclean hands; and (5) the mistakes of MNPS in making multiple misrepresentations to the judiciary regarding displacement and availability of McGruder's former job, and the appointing a third-party to the position while she had a substantial claim pending judicial determination.

In the end, McGruder recognizes that the application of judicial estoppel potentially complex here. But on balance, the equities do not support a severe application in this case – and certainly not to the extent requested by Metro.

4. Further in the alternative, judicial estoppel should not be enforced to eliminate the rights and interest of the trustee, creditors, or counsel.

If the appellate court is inclined to apply judicial estoppel against McGruder, the appropriate sanction is not retroactive dismissal and elimination of all awarded accountabilities. Rather, the matter should proceed with the trustee (on behalf of creditors) joined or substituted as a party. Federal courts overwhelmingly endorse such an action in similar situations. *Parker v. Wendy's International*, 365 F.3d 1268, 1272 (11th Cir. 2004) (dismissal improper because "the trustee is presumably innocent of the conduct that barred the plaintiff's claims, [and] there is no equitable basis to judicially estop the trustee"); *Reed v.*

*City of Arlington*, 650 F.3d 571, *2 (5th Cir. 2011) (holding that an "innocent trustee can pursue for the benefit of creditors a judgment or cause of action that the debtor fails to disclose in bankruptcy"); *Eastman v. Union Pacific R.R.* Co., 493 F.3d 1151, 1155 n.3 (10th Cir. 2007); *See also*, Fed. R. Civ. P. 17(a)(3).

## CONCLUSION

After a jury determined that Metro violated the Title VII rights of McGruder, the district court's reinstatement award was not only appropriate … it was entitled. Metro's attempt to secure a get out of jail free card by arguing judicial estoppel in this appeal fails because: (1) it failed identify the issue on its Notice of Appeal; (2) it failed to raise or preserve the issue at the district court; and (3) it fails to demonstrate it is applicable or appropriate in this action. Dr. McGruder respectfully requests that the reinstatement award be affirmed, and the judicial estoppel argument be ignored. She also requests that reinstatement be immediately instructed.

Respectfully submitted,

/s/ Brian C. Winfrey
Brian C. Winfrey (#025766)
2021 Richard Jones Rd, Ste 310-A
Nashville, TN 37215

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing document complies with the word limit of the Sixth Circuit excluding the parts of the document exempted by Fed. R. App. P. 32(f), and it contains 12,812 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared using Times New Roman 14-point type in Microsoft Word for Office 365.

*/s/Brian C. Winfrey*

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was served via the court's electronic filing system to J. Brooks Fox, Dep't of Law for Metro Nashville at PO Box 196300, Nashville, TN  600 37219 on December 8, 2022.

*/s/ Brian C. Winfrey*

# **ADDENDUM**

## **Designation of Cited District Court Documents (Within the Electronic Record**

| RE No. | Title | PageID # Range |
|--------|-------|----------------|
| 1 | Complaint | 1-6 |
| 28 | Summary Judgment Response | 258-282 |
| 78 | Verdict | 523 |
| 79 | Judgment | 524 |
| 82 | Reinstatement Motion | 538-542 |
| 83 | Trial Transcript Vol V | 543-574 |
| 89 | Attorney's Fees Motion | 1318-1328 |
| 90 | Response Reinstatement Motion | 538-542 |
| 96 | Trial Transcript Vol. IV | 2037-2238 |
| 111 | Order | 2394 |
| 113 | Award Attorney's Fees | 2396-2400 |
| 116 | Reinstatement Order | 2403-2405 |
| 117 | Notice of Appeal | 2406-2407 |
| 118 | Motion to Stay Reinstatement | 2408 |
| 118-1 | Clay Declaration | 2409-2411 |
| 121 | Response Motion to Stay | 2421-2436 |

| 125 | Motion to Revise | 2509 |
| 127 | Reply to Stay Motion | 2524-2528 |
| 128 | Response Motion to Revise | 2533 |
| 128-1 | McGruder Declaration | 2550-51 |
| 128-2 | Correspondence | 2552 |
| 128-3 | Letter to MNPS | 2555-57 |
| 129 | Reply to Stay Motion | 2524-2528 |
| 131 | Order on Motion to Revise/Alter | 2563 |
| 132 | Order: Motion to Stay Reinstatement | 2564-2566 |